BC



RECEIVED AXK
2/28/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | | |
|---|---|---|
| **PETER NICHOLAS MYMA,** | ) | |
| | ) | 1:25-cv-02154 |
| Plaintiff, | ) | Judge April M. Perry |
| | ) | Magistrate Judge Daniel P. McLaughlin |
| v. | ) | RANDOM / Cat. 2 |
| | ) | Case No. _____ |
| | ) | |
| **WENDY ANNE WROE and** | ) | |
| **JOHNNY DARRELL LORICK,** | ) | |
| | ) | |
| Defendants. | ) | **DEMAND FOR JURY TRIAL** |

**FIRST COMPLAINT**

## I. NATURE OF THE ACTION

This action arises from an unrelenting, systematic deprivation of Plaintiff's **fundamental liberty interest** in maintaining a relationship with his children—an interest that has been wholly disregarded and obstructed by the Defendants through intentional and malicious misconduct. Since August 3, 2016, Plaintiff, a fit and cooperative parent, has faced the **total denial of visitation** with his children, a reality orchestrated through wrongful interference, disparagement, and judicial indifference. Defendants, including **Defendant Wendy Anne Wroe**, have engaged in a pattern of conduct designed to **alienate the children from their father**, depriving Plaintiff not only of his rightful parental role but also of any meaningful access to his own children.

The emotional toll of this **prolonged, deliberate, and unjustified separation** has been profound. Defendants have not only **withheld visitation** but have actively **disparaged Plaintiff's character, manipulated legal proceedings, and fabricated justifications for denying access**, all while state courts have refused to uphold fundamental due process protections. Despite Plaintiff's repeated efforts to assert his parental rights—providing substantial evidence to refute the Defendants' baseless claims—the courts in Indiana and North Carolina have failed to enforce constitutional safeguards, enabling and exacerbating the harm.

This case is not merely about a custody dispute—it is about **the intentional infliction of emotional distress through the obstruction of fundamental parental rights**. The Defendants' actions, compounded by judicial failures, have inflicted **severe and**

**ongoing psychological harm**, warranting federal intervention. **This Court must recognize that such unchecked parental alienation and deprivation of access constitute not only an irreparable injury to Plaintiff and the children, but a direct violation of fundamental liberties that demands redress.**

## II. TABLE OF CONTENTS

Contents

I. NATURE OF THE ACTION ................................................................. 2

II. TABLE OF CONTENTS ................................................................... 3

III. JURISDICTION AND VENUE ........................................................... 6

IV. PARTIES ................................................................................ 8

V. FORUM .................................................................................. 8

VI. PRELIMINARY ARGUMENT ........................................................... 10

    Choice of Law ........................................................................ 10

    Discovery Rule ....................................................................... 12

    Ongoing Harm Rule .................................................................. 13

    Joint and Several Liability ........................................................... 13

    The Due Process Violation of Ignoring Found Facts in Judicial Decision-Making ... 15

    Void-for-Vagueness Doctrine ........................................................ 16

    Availability of Punitive Damages ..................................................... 17

    Factual Sufficiency .................................................................... 18

**VII. HISTORY** ................................................................................................ **19**

**VIII. CAUSES OF ACTION** .............................................................................. **21**

Count 1: Intentional Infliction of Emotional Distress (IIED) under Illinois Law and Restatement (Second) of Torts § 46 .......................................................... 21

Count 2: Negligent Infliction of Emotional Distress (NIED) under Illinois Direct Impact Law .................................................................................................... 26

Count 3: Defamation under Common and Illinois Law ............................................ 30

Count 4: Common Law Conspiracy to Alienate and Destroy the Society and Companionship Between Plaintiff and His Children - (Pursuant to Illinois Law; N.C. Gen. Stat. § 52-13:) ..................................................................................... 36

Count 5: Common Law Fraud Under Illinois and Federal Law ............................... 41

Count 6: Tortious Interference with Child Custody under Illinois Law ................... 46

Count 7: Common Law Intrusion Upon Seclusion under Restatement (Second) of Torts § 652B ................................................................................................. 51

Count 8: Interception and Disclosure of Wire, Oral, or Electronic Communications under 18 U.S.C. § 2511 and 2520 ............................................................... 55

Count 9: Eavesdropping Under 720 ILCS 5/14-1 et seq. ......................................... 60

Count 10: Declaratory Judgment Under 28 U.S.C. § 2201-2202 and *Mitchum v. Foster* ........................................................................................................... 65

Count 11: Declaratory and Injunctive Relief for Due Process and Equal Protection Violations in Enforcement of Fraudulent Attorney's Fee Award ........................... 70

Count 12: Injunctive Relief Under the All Writs Act, 28 U.S.C. § 1651, and 42 U.S.C. § 1983—Prevention of Enforcement of Unconstitutional Court Orders and Return of Children Based on Parental Alienation and Jurisdictional Violations ................ 81

Count 13: Habeas Corpus under 28 U.S.C. § 2241, Indiana Code § 34-25.5-7-1, and North Carolina General Statutes Chapter 17 ......................................................... 87

Count 14: Civil Rico Claim Under Indiana Code § 35-45-6-2 and 18 U.S.C. § 1962 92

Count 15: Violation of Civil Rights Under 42 U.S.C. § 1983 (First and Fourteenth Amendments) .................................................................................................. 101

Count 16: Abuse of Process under Common Law ................................................. 111

Count 17: Improper Transfer of Jurisdiction and Violation of Due Process Rights Under 42 U.S.C. § 1983 .................................................................................... 115

Count 18: Violation of Civil Rights Under 42 U.S.C. § 1983 (First, Fifth and Fourteenth Amendments) .................................................................................. 120

Count 19: Fraud and Concealment Causing Emotional Distress and Deprivation of Due Process.......................................................................................................... 132

Count 20: Unconstitutionality of Indiana Trial Rule 52(A) and its Enforcement Under Color of State Law.................................................................................... 136

Count 21: Excessive Fines and Judicial Retaliation (Eighth and Fourteenth Amendments, Austin v. United States, 509 U.S. 602 (1993)) .............................. 142

**IX. IMMEDIATE RELIEF REQUESTED** ................................................................ **148**

**X. ADDITIONAL RELIEF REQUESTED** ................................................................. **150**

**XI. JURY DEMAND**.............................................................................................. **151**

**XII. VERIFICATION** ............................................................................................. **152**

**XIII. CERTIFICATE OF SERVICE** .......................................................................... **153**

**XIV. PARTY ADDRESSES**..................................................................................... **154**

1

## III. JURISDICTION AND VENUE

3      1.  This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1331, as Plaintiff's claims arise under the Constitution and laws of

the United States, including but not limited to 42 U.S.C. § 1983, 42 U.S.C. §

1985(3), the Due Process and Equal Protection Clauses of the Fourteenth

Amendment, and the First and Eighth Amendments.

8      2.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3), as

Plaintiff seeks redress for the deprivation of rights, privileges, and

immunities secured by the Constitution and federal law, under color of state

law.

12     3.  Supplemental jurisdiction exists over Plaintiff's related state law claims

pursuant to 28 U.S.C. § 1367, as these claims are so closely related to the

federal claims that they form part of the same case or controversy.

15     4.  Diversity jurisdiction is proper under 28 U.S.C. § 1332, as the matter in

controversy exceeds $75,000, exclusive of interest and costs, and is

between citizens of different states. Plaintiff is a citizen of Illinois, while

Defendants Wendy Anne Wroe and Johnny Darrell Lorick are citizens of

North Carolina, with property domiciled in Indiana.

5.   Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the jurisdiction of this Court, including most of the actions and omissions impacting Plaintiff in Illinois committed by defendants in Illinois and Indiana.

6.   This Court has jurisdiction to review and address Plaintiff's constitutional claims, which challenge procedural violations and constitutional infringements by state courts. The claims do not involve custodial assignments or traditional family law issues but instead focus on constitutional harms, including due process violations and equal protection denials under color of state law.

7.   Plaintiff's claims are not barred by the Rooker-Feldman doctrine, as clarified by the Supreme Court in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005). Plaintiff does not seek to overturn state court decisions but rather challenges the facial constitutionality, procedural deficiencies, and enforceability of state court orders.

8.   Plaintiff also seeks declaratory relief under 28 U.S.C. § 2201 and further relief under 28 U.S.C. § 2202 to address ongoing constitutional violations and ensure adherence to due process. Specifically, Plaintiff seeks redress for facially deficient state court orders that fail to provide findings of fact or support conclusions of law, in violation of procedural due process.

7

## IV. PARTIES

9. Plaintiff, Peter Nicholas Myma, is an individual who has continuously maintained a permanent residence in Skokie Illinois for the last 6 decades.

10. Defendant, Wendy Anne Wroe ("Defendant Wroe"), is an individual now residing in Apex, North Carolina, previously a resident of Illinois and Indiana.

11. Defendant, Johnny Darrell Lorick ("Defendant Lorick"), is an individual now residing in Apex, North Carolina with Defendant Wroe and previously an Illinois employee and resident of Indiana.

12. During most of the time that they harmed Plaintiff, Defendants resided in Illinois and Indiana.

## V. FORUM

13. Plaintiff has resided in Illinois throughout the nearly nine-year period during which Defendants inflicted significant and ongoing emotional distress. Although Defendants' actions originated from multiple states, including Indiana and North Carolina, the harm caused by these actions has consistently impacted Plaintiff in Illinois, establishing this jurisdiction as the most appropriate forum.

14. Illinois remains the most suitable forum for this action, as the state is where Plaintiff resides and continues to feel the full impact of Defendants' misconduct. As established in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462

(1985), jurisdiction is proper when Defendants' actions are purposefully directed toward the forum state, and Plaintiff's residence in Illinois underscores the strong connection between Defendants' conduct and the harm experienced within this state.

15. While Defendants have relocated between Indiana and North Carolina, their lack of a fixed and consistent residence throughout the course of the harm does not detract from Illinois' suitability as the forum. On the contrary, Plaintiff's constancy of residence in Illinois strengthens the argument that this forum is the appropriate jurisdiction for addressing the claims, as the harm has been experienced here over the entirety of the eight-year plus period.

16. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district. Defendants' multi-state conduct directly targeted Plaintiff in Illinois, where the emotional distress and financial harm continue to be felt.

17. Defendants' ability to foresee litigation in Illinois is bolstered by their knowledge that Plaintiff resides in this state, and their actions—spanning multiple jurisdictions—were intended to harm Plaintiff where he lives. As such, asserting jurisdiction in Illinois does not offend traditional notions of fair play and substantial justice.

18. Illinois law recognizes ongoing harm and its effects on residents, making this forum particularly suited to adjudicate claims that span multiple states. The courts in the 7th Circuit, and specifically the Northern District of Illinois, are equipped to address these claims within the framework of both federal and Illinois law, ensuring justice for Plaintiff while respecting constitutional protections.

## VI. PRELIMINARY ARGUMENT

## Choice of Law

19. This case involves interstate misconduct originating in Illinois, with harms further perpetuated in Indiana and North Carolina. Under the *Restatement (Second) of Conflict of Laws* § 145, Illinois law applies as it bears the most significant relationship to the claims. Illinois courts routinely apply the "most significant relationship" test to determine the appropriate law when multiple jurisdictions are involved. See *Wilcosky v. Amazon.com, Inc.*, 517 F. Supp. 3d 751 (N.D. Ill. 2021).

20. Illinois is the proper forum because:

a. **Place of Injury**: The harm began in Illinois, where the Plaintiff's children were unlawfully removed, leading to significant emotional and financial distress. Illinois remains the epicenter of harm due to Plaintiff's residence and continued suffering.

b. **Plaintiff's Residency**: Plaintiff, an Illinois resident, has endured the effects of Defendants' misconduct primarily in Illinois. This factor supports Illinois's interest in applying its law to provide redress for its citizens.

c. **Origin of Misconduct**: Defendants' initial actions, including fraudulent misrepresentations and violations of Plaintiff's parental rights, occurred in Illinois, making it the foundational jurisdiction for this dispute.

d. **Public Policy**: Illinois law reflects the state's vested interest in protecting residents from fraud, intentional infliction of emotional distress, and procedural injustices.

e. Illinois law's application ensures consistency, fairness, and adherence to public policy. Moreover, under Seventh Circuit precedent, including *Elzeftawy v. Pernix Grp., Inc.*, 477 F. Supp. 3d 734 (N.D. Ill. 2020), Illinois law governs unless a substantive conflict with another jurisdiction's law affects the case outcome.

11

**Discovery Rule**

21. Plaintiff's claims are timely under Illinois's discovery rule, which tolls the statute of limitations until the Plaintiff knows or reasonably should know both the injury and its cause. See *Henderson Square Condo. Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139.

22. The harm in this case was obscured by Defendants' active concealment, including:

    a. Termination of Plaintiff's communication with his children, preventing discovery of ongoing disparagement and alienation efforts.

    b. Defendants' strategic exploitation of vague court orders, which Plaintiff only discovered when employers cited the unsupported August 9, 2022 Indiana court order to deny him employment.

    c. Plaintiff's realization, in 2024, that Defendants had used court processes to publish defamatory assertions about him.

23. Each instance of concealment and subsequent harm constitutes a separate injury, restarting the limitations period. See *Feltmeier v. Feltmeier*, 207 Ill. 2d 263 (2003).

**Ongoing Harm Rule**

24. Defendants' conduct represents a continuous course of tortious behavior, commencing in 2016 and persisting to the present. Illinois recognizes the ongoing harm rule, particularly for emotional distress claims where harm accrues cumulatively. See *Feltmeier*, id.

25. The harm inflicted on Plaintiff includes:

26. Continuous interference with parental rights through court orders secured by fraud.

27. Persistent disparagement and alienation of Plaintiff's children, furthering emotional distress.

28. A cumulative impact that cannot be isolated to a single act, as each action exacerbates the prior harm.

29. Plaintiff's claims are timely because the conduct constitutes an ongoing violation. The statute of limitations only begins to run upon cessation of the harmful activity or abatement of its effects.

**Joint and Several Liability**

30. The harms described in this Complaint began in 2016 and have continued unabated, intensifying over time and causing substantial damage to the Plaintiff.

31. The named and unnamed Defendants, through a common plan of action, committed acts furthering their shared objective of denying Plaintiff's visitation rights and alienating his children. Under established principles of joint and several liability, all Defendants are liable for the entirety of the harm caused by their collective conduct, regardless of their specific roles.

32. Defendants' actions, coupled with the failure of state actors to enforce court orders, represent a unified and continuous course of conduct designed to deprive Plaintiff of his parental rights, causing ongoing emotional, financial, and reputational harm.

33. Defendants acted in concert, systematically working to alienate Plaintiff from his children. This included Defendant Lorick's active role in monitoring court-ordered calls, coaching the children's responses, and disparaging Plaintiff, all of which contributed to the broader campaign of parental alienation.

34. Under the principle of **joint and several liability**, Defendants are jointly responsible for the cumulative harm caused by their actions, including all damages stemming from the intentional and negligent infliction of emotional distress and violations of Plaintiff's civil rights under 42 U.S.C. § 1983 and other claims outlined in this Complaint.

35. The Defendants' actions were further compounded by their leveraging of state actors who, under color of state law, selectively enforced or ignored

14

court orders to the detriment of Plaintiff. Defendants demonstrated a consistent disregard for legal obligations, emboldened by a judicial system that failed to hold them accountable.

36. Over nearly nine years, Defendants' coordinated and intentional efforts have caused continuous harm, rendering both Defendant Wroe and Defendant Lorick jointly and severally liable for the full extent of damages, including harms facilitated by state actors under color of law. Immunity claims asserted by state actors are irrelevant to the liability of these Defendants for their collective misconduct.

37. Plaintiff therefore seeks to hold Defendants jointly and severally liable for all damages arising from their unlawful conduct, including:

    a.   Intentional and negligent infliction of emotional distress;

    b.   Violations of civil rights under 42 U.S.C. § 1983; and

    c.   Any other claims pleaded herein.

**The Due Process Violation of Ignoring Found Facts in Judicial Decision-Making**

38. Due process is not merely about the collection of facts but about the legal consequences that must flow from them. In this case, the state courts acknowledged and found as a matter of fact that Defendants denied all court-ordered visitation. However, despite these factual findings, the courts

15

1  **failed to incorporate them into their conclusions of law**—effectively

2  rendering the fact-finding process meaningless. This practice, where a court

3  treats its factual determinations as **legally inconsequential**, is the very

4  definition of arbitrary and capricious decision-making and constitutes a

5  fundamental **due process violation**. Just as the Administrative Procedure

6  Act, 5 U.S.C. § 706, prohibits agencies from making decisions disconnected

7  from the facts in evidence, judicial determinations must be reasoned and

8  accountable. A court that **recognizes a violation but refuses to enforce**

9  **legal consequences for it** undermines the rule of law and due process

10  protections under the Fifth and Fourteenth Amendments.

11  **Void-for-Vagueness Doctrine**

12  39. The Due Process Clause of the Fourteenth Amendment mandates that

13  judicial orders provide clear, specific, and actionable guidance to avoid

14  arbitrary enforcement. Orders that fail to articulate specific obligations or

15  rely on unsupported conclusions are void for vagueness. See *FCC v. Fox*

16  *Television Stations, Inc.*, 567 U.S. 239 (2012).

17  40. The August 9, 2022 order and related court directives are unconstitutionally

18  vague because:

19  a. They fail to distinguish factual findings from legal conclusions.

16

b. Their ambiguity allowed Defendants to exploit them, selectively enforcing provisions against Plaintiff while evading their own obligations.

c. They deprived Plaintiff of fair notice of his rights and obligations, leading to further harm.

41. Judicial orders that lack clarity and factual basis undermine fundamental fairness, a principle enshrined in the Due Process Clause. See *FCC v. Fox Television Stations*, id; *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972) (explaining that vague laws violate due process because they fail to provide fair notice and invite arbitrary enforcement).

**Availability of Punitive Damages**

42. Punitive damages are warranted under Illinois law to punish and deter egregious conduct, particularly when malice or fraud is involved. See *Loitz v. Remington Arms Co.*, 138 Ill. 2d 404 (1990).

43. Defendants' actions over eight years —intentional, malicious, and fraudulent—justify punitive damages to:

a. Signal the unacceptability of such conduct.

b. Deter similar actions by Defendants and others.

c. Provide Plaintiff with appropriate redress for Defendants' willful disregard for his rights.

17

44. Plaintiff will present clear and convincing evidence of Defendants' malicious intent, as required under Illinois law, to justify the imposition of punitive damages.

**Factual Sufficiency**

**Disclaimer Regarding Conspiracy, Fraud, And Racketeering Allegations**

45. The allegations of conspiracy, fraud, and racketeering set forth in this complaint are based on available information and reasonable inferences drawn from Defendants' conduct. As is well recognized, acts of conspiracy and fraud are deliberately concealed, making full factual pleading difficult at this stage. Plaintiff asserts that the evidence provided is sufficient to warrant discovery, as further substantiation can only be obtained through formal discovery procedures and FOIA requests.

46. Under *Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)*, and *Ashcroft v. Iqbal, 556 U.S. 662 (2009)*, Plaintiff need only allege facts sufficient to make the claims plausible, not prove them at the pleading stage. The full factual record will develop during discovery. Defendants' concerted efforts to conceal key facts should not be used to preclude Plaintiff from asserting valid claims.

47. Plaintiff has been denied all meaningful discovery in Indiana and North Carolina, with trial courts ignoring motions to compel. FOIA requests were initially denied, requiring Plaintiff to litigate merely to access public trial

18

recordings. Moreover, Defendants have failed to respond to requests for admissions. This lack of discovery must be weighed in the Court's decision on any motion to dismiss. Plaintiff respectfully requests that, should Defendants continue to obstruct discovery, all well-pleaded allegations be deemed true in accordance with governing legal standards.

48. Defendants retain the right to invoke the Fifth Amendment privilege against self-incrimination. However, in civil litigation, adverse inferences may be drawn from a party's refusal to testify on matters relevant to the claims at issue. Accordingly, any assertion of the Fifth Amendment by Defendants should be construed as an admission to the factual allegations contained herein, to the extent permitted by law.

**VII. HISTORY**

49. **Overview of Events**: Plaintiff, a resident of Illinois, has endured ongoing harm due to the Defendants' systematic interference with his parental rights since 2016. This interference spans multiple states, including Illinois, Indiana, and North Carolina, and reflects a continuous pattern of intentional misconduct and procedural abuse.

**Key Timeline of Events:**

50. **2016**: Defendants removed Plaintiff's children from Illinois without notice, prompting Plaintiff to successfully obtain a protective, stalking and no-contact order in Cook County, Illinois.

51. **2016–2022**: Despite court orders, Defendants denied Plaintiff 99.9% of his court-ordered visitation, blocked communication, and engaged in a campaign of alienation, disparagement, and interference.

52. **2019**: The Indiana court issued a Final Decree granting Plaintiff minimal visitation rights but failed to enforce compliance, enabling Defendants to continue their misconduct unimpeded.

53. **2021–2022**: Defendants relocated to North Carolina without prior court approval, further complicating Plaintiff's ability to maintain contact with his children.

54. **2022**: The trial court, relying entirely on Defendants' proposed order, issued a judgment that included unsupported findings, labeled Plaintiff's enforcement efforts as "frivolous," and imposed financial penalties disproportionate to his income.

55. **2022:** The judgement also created the obligation: "After 6 Months, the court *will* review Respondent's [Plaintiff in the instant case] parenting time." Instead, the jurisdiction was transferred to NC based on private communication from Defendant Wroe, twice ignoring Plaintiff's extensively documented motions to the successful visits.

56. **2023–2024**: The case was transferred to North Carolina, where Plaintiff's remaining rights were terminated in proceedings that excluded his participation and ignored his objections.

20

57. **Impact on Plaintiff**: Defendants' actions have caused Plaintiff severe emotional distress, financial harm, and the complete erosion of his relationship with his children. These harms are ongoing and intensifying due to the continuous nature of Defendants' misconduct.

## VIII. CAUSES OF ACTION

## Count 1: Intentional Infliction of Emotional Distress (IIED) under Illinois Law and Restatement (Second) of Torts § 46

**Incorporation of Other Allegations**

58. Plaintiff realleges and incorporates by reference all preceding and following paragraphs as though fully set forth herein.

**Extreme and Outrageous Conduct by Defendants**

59. Defendants, by their acts and omissions described herein, engaged in conduct that was extreme, outrageous, and beyond the bounds of decency in a civilized society. Their actions were undertaken with malicious intent or reckless disregard for the emotional harm caused to Plaintiff.

60. Specifically, Defendants engaged in an ongoing and malicious campaign to alienate Plaintiff from his children and destroy his parental relationship, including but not limited to:

a. Deliberately violating court-ordered visitation schedules and interfering with Plaintiff's ability to maintain a meaningful relationship with his children;

b. Blocking Plaintiff's court-ordered communication through phone calls, video calls, emails, and letters, and withholding gifts sent to the children;

c. Coaching the children to reject Plaintiff's gifts, deny his existence, and express unjustified hatred and disrespect toward him;

d. Relocating the children without notice, making it practically impossible for Plaintiff to exercise his parental rights;

e. Falsely portraying Plaintiff as a "liar," "criminal," and "abuser" to the children, causing irreparable harm to Plaintiff's parental bond;

f. Monitoring, eavesdropping, and prematurely terminating court-ordered calls between Plaintiff and his children, despite court orders prohibiting such interference;

g. Exploiting systemic judicial failures by the Indiana and North Carolina courts to further alienate Plaintiff from his children, including:

    i. Encouraging vague and unreviewable court orders to facilitate continued interference;

    ii. Engaging in private communications with judges to secure improper jurisdictional rulings; and

    iii. Exploiting the courts' refusal to enforce prior orders to evade accountability for violations.

**Judicial Complicity in Defendants' Outrageous Conduct**

61. The Indiana and North Carolina courts' repeated failure to enforce their own visitation orders, hold Defendants accountable, or issue proper findings of fact emboldened Defendants to continue their pattern of misconduct:

a. Plaintiff diligently sought judicial relief at every stage, yet his claims were dismissed, ignored, or inadequately addressed, leaving him powerless to prevent further harm.

b. The courts' systemic failures exacerbated the emotional harm caused by Defendants, reinforcing Plaintiff's feelings of hopelessness, despair, and betrayal.

**Intent and Causation**

23

62. Defendants acted with the intent to cause Plaintiff severe emotional distress or, at minimum, with reckless disregard for the likelihood that their conduct would cause such distress:

    a. Defendants' coordinated efforts to alienate Plaintiff from his children were deliberate and calculated, targeting Plaintiff's most fundamental liberty interest as a parent.

    b. The harm caused by Defendants' actions was foreseeable, severe, and intended to inflict maximum emotional pain on Plaintiff.

**Harm to Plaintiff**

63. As a direct and proximate result of Defendants' conduct, compounded by systemic judicial failures or malice, Plaintiff has suffered and continues to suffer severe emotional distress, including but not limited to:

    a. Recurring nightmares and intrusive thoughts related to the alienation of his children;

    b. Symptoms consistent with Complex Post-Traumatic Stress Disorder (C-PTSD), including chronic anxiety, depression, and emotional numbness;

    c. Physical manifestations of distress, such as insomnia, headaches, gastrointestinal issues, and weight loss;

d. Loss of self-esteem, professional reputation, and trust in the judicial process; and

e. Persistent grief, sorrow, and feelings of betrayal stemming from the irreparable damage to Plaintiff's relationship with his children.

**Legal Basis for IIED Claim**

64. Defendants' conduct was so outrageous and egregious that it shocks the conscience and exceeds all bounds of decency tolerated in a civilized society. Their actions constitute intentional infliction of emotional distress under Illinois law and the Restatement (Second) of Torts § 46.

**Relief Requested**

65. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award:

a. Compensatory damages in an amount to be determined at trial;

b. Punitive damages sufficient to deter Defendants from further outrageous conduct;

c. Injunctive relief compelling Defendants to cease all alienation efforts and restore Plaintiff's ability to communicate with his children;

d. Declaratory relief recognizing the systemic failures of the state courts in exacerbating Plaintiff's harm and requiring remedial measures;

e. Costs of this action, including reasonable attorneys' fees; and

f. Such other and further relief as the Court deems just and proper.

## Count 2: Negligent Infliction of Emotional Distress (NIED) under Illinois Direct Impact Law

**Incorporation of Other Allegations**

66. Plaintiff realleges and incorporates by reference all preceding and following paragraphs as though fully set forth herein.

**Duty of Care**

67. Defendants, along with the Indiana and North Carolina courts acting under color of state law, owed Plaintiff a duty of care not to engage in conduct that would foreseeably cause him emotional and physical harm. This duty includes:

a. Adhering to court orders to maintain the stability of Plaintiff's parental relationship;

b. Refraining from actions that interfere with or alienate Plaintiff's children without cause; and

c. Ensuring compliance with constitutional due process in adjudicating matters related to Plaintiff's fundamental liberty interest in his parental relationship.

**Breach of Duty**

68. Defendants breached their duty of care by negligently engaging in actions harmful to Plaintiff, including:

    a.  Violating court-ordered visitation schedules, effectively severing Plaintiff's meaningful relationship with his children;

    b.  Blocking and interfering with Plaintiff's court-ordered communication through calls, emails, and letters;

    c.  Making defamatory and alienating statements to the children, fostering hatred and disrespect toward Plaintiff;

    d.  Relocating the children without proper notice or legal authority, further obstructing Plaintiff's access; and

    e.  Exploiting systemic failures of Indiana and North Carolina courts to secure outcomes contrary to law and justice, thereby intensifying the harm to Plaintiff.

69. The Indiana and North Carolina courts contributed to this breach by:

    a.  Failing to enforce their own visitation orders despite Plaintiff's numerous requests for relief;

    b.  Issuing vague and unenforceable rulings, emboldening Defendants to continue their violations;

c. Denying Plaintiff's procedural rights to present evidence or challenge false claims in critical hearings; and

d. Allowing private communications and ex parte interactions with Defendants to influence jurisdictional decisions, resulting in improper transfer of Plaintiff's case and the denial of meaningful access to justice.

**Direct Physical Impact**

70. Defendants' negligent conduct caused a direct physical impact on Plaintiff's health and well-being. Specifically:

a. Chronic headaches, digestive issues, and physical exhaustion;

b. Elevated stress levels, leading to hypertension and severe insomnia; and

c. Recurring nightmares and anxiety directly tied to Defendants' actions and the systemic failures of the state courts.

71. These physical manifestations are directly caused by the cumulative trauma of Defendants' parental alienation campaign, compounded by the state courts' negligent handling of Plaintiff's parental rights.

**Severe Emotional Distress**

72. As a direct and proximate result of Defendants' negligence, compounded by the failures of the state courts, Plaintiff has suffered:

     a. Persistent anxiety, depression, and symptoms consistent with Complex Post-Traumatic Stress Disorder (C-PTSD);

     b. Emotional pain, grief, and suffering caused by the alienation of his children;

     c. Feelings of helplessness, despair, and humiliation resulting from the courts' dismissal of his legitimate claims and evidence.

**Causation**

73. But for Defendants' negligent conduct and the state courts' failure to enforce their orders, Plaintiff would not have suffered the described physical and emotional harm. Defendants' actions, exacerbated by systemic judicial failures, were the direct and proximate cause of Plaintiff's injuries.

**Foreseeability**

74. Defendants, along with the Indiana and North Carolina courts, knew or should have known that their negligent conduct would cause Plaintiff severe emotional and physical harm, given the sensitivity of parental relationships and the predictable consequences of alienation.

**Pattern of Negligence**

75. Defendants' repeated and reckless violations of court orders, coupled with the state courts' refusal to enforce those orders or address due process violations, demonstrate a persistent pattern of negligence, further exacerbating Plaintiff's harm.

**Relief Requested**

76. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award:

    a.  Compensatory damages in an amount to be determined at trial, sufficient to redress the severe emotional and physical harm caused by Defendants' negligence;

    b.  Punitive damages, where available, to deter future violations and reckless conduct;

    c.  Injunctive relief compelling Defendants to cease interference with Plaintiff's relationship with his children and comply with all court orders;

    d.  Declaratory relief recognizing the role of judicial failures in compounding Plaintiff's injuries and requiring structural reforms to prevent further harm;

    e.  Costs of this action, including reasonable attorneys' fees; and

    f.  Such other and further relief as this Court deems just and proper.

## Count 3: Defamation under Common and Illinois Law

**Incorporation of Other Allegations**

77. Plaintiff realleges and incorporates by reference all preceding and following paragraphs as though fully set forth herein.

**Legal Standard for Defamation under Illinois Law**

78. To establish a defamation claim, Plaintiff must demonstrate:

    a. Defendants made a false statement about Plaintiff;

    b. The false statement was communicated to a third party (publication);

    c. Defendants acted negligently or with actual malice in making the false statement; and

    d. Plaintiff suffered harm to his reputation or other damages as a result of the false statement.

**3. False Statements by Defendants**

79. Defendants made multiple false and defamatory statements about Plaintiff, including but not limited to:

    a. Calling Plaintiff a "criminal," "kidnapper," and "abuser";

    b. Accusing Plaintiff of being a "liar" and a "negligent caregiver";

    c. Alleging Plaintiff forged legal documents; and

    d. Claiming Plaintiff was no longer the legitimate parent of his children.

80. These statements were wholly false, maliciously made, and lacked any factual basis.

81. Defendants intentionally made these statements to alienate Plaintiff from his children and damage his reputation.

**4. Publication of Defamatory Statements**

82. Defendants communicated the false statements directly to Plaintiff's children, who are third parties for the purposes of defamation law.

83. Defendants' statements were further disseminated when the children, under Defendants' undue influence, repeated these false narratives.

84. Defendants' actions resulted in the false statements being effectively published within the family and potentially beyond.

85. The court's designation of Plaintiff as 'frivolous,' later cited by potential employers, caused irreparable harm to Plaintiff's reputation and career prospects as a teacher.

86. The public publication of adverse court orders compounded the emotional and financial harm suffered by Plaintiff.

87. The Indiana Appellate court published without normally required permission from either family court litigant its denial of Plaintiff's appeal so as to have a chilling effect on others seeking due process.

**Fault in Defendants' Conduct**

88. Defendants acted with at least negligence, and in some instances with actual malice, in making these false statements.

32

89. Defendants were aware or should have been aware that their statements were false and would cause significant harm to Plaintiff.

90. Defendants were specifically told not to defame Plaintiff under court order and Indiana Parenting Time Guidelines.

91. Defendants' statements were made as part of a concerted effort to alienate Plaintiff from his children and destroy his reputation.

**Damages to Plaintiff**

92. The defamatory statements caused Plaintiff severe reputational harm, including loss of respect and credibility in the eyes of his children and any third parties who may have heard or believed the statements.

93. Plaintiff has suffered profound emotional distress, including humiliation, psychological trauma, and damage to his relationship with his children.

94. These statements irreparably undermined Plaintiff's parental rights and standing, causing long-term harm to his familial relationships and emotional well-being.

**Defamation Per Se**

95. Defendants' statements constitute defamation per se under Illinois and common law because they:

    a.  Impute the commission of a crime, including kidnapping and forgery;

    b.  Impugn Plaintiff's integrity, honesty, and fitness as a parent; and

     c.   Are inherently damaging to Plaintiff's reputation without requiring further proof of harm.

**Defamation Per Quod**

96. In the alternative, if any of Defendants' statements are considered defamation per quod, Plaintiff has incurred actual damages, including:

     a.   Financial costs related to legal actions and therapy for emotional distress;

     b.   Damage to Plaintiff's parental relationship with his children; and

     c.   Harm to Plaintiff's reputation in Illinois and elsewhere requiring rehabilitation efforts.

**Ongoing Conspiratorial Harm**

97. The defamatory statements made by Defendants continue to **cause ongoing harm to Plaintiff**, as they persist in damaging his reputation, legal standing, and parental rights. This ongoing injury extends beyond the initial publication, continuously affecting Plaintiff's ability to seek justice and maintain his relationship with his children.

98. These defamatory statements are concealed, particularly with the lack of ongoing contact with the children, their full extent only recognizable through discovery, which has been denied Plaintiff to date.

99. Furthermore, these defamatory statements are **not isolated incidents but are part of a greater conspiracy to deprive Plaintiff of his First Amendment right to consortium and companionship with his children**, reinforcing a pattern of judicial and extrajudicial retaliation aimed at silencing and marginalizing him.

**Relief Requested**

100.   WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award the following relief:

    a. **Compensatory damages** in an amount to be determined at trial for reputational harm, emotional distress, and other losses caused by Defendants' defamatory statements;

    b. **Punitive damages** sufficient to deter Defendants and others from engaging in similar defamatory conduct in the future;

    c. **Injunctive relief** requiring Defendants to cease making defamatory statements about Plaintiff and retract existing falsehoods;

    d. **Costs of suit**, including reasonable attorneys' fees; and

    e. Such other and **further relief** as this Court deems just and proper.

35

**Count 4: Common Law Conspiracy to Alienate and Destroy the Society and Companionship Between Plaintiff and His Children - (Pursuant to Illinois Law; N.C. Gen. Stat. § 52-13:)**

**Incorporation of Other Allegations**

101.     Plaintiff realleges and incorporates by reference all preceding and following paragraphs as though fully set forth herein.

**Legal Standard for Common Law Conspiracy**

102.     Under Illinois law, to establish a claim for conspiracy, Plaintiff must demonstrate:

a.   An agreement between two or more persons to commit an unlawful act or a lawful act by unlawful means;

b.   Intent among the conspirators to achieve the unlawful objective;

c.   At least one overt act performed by a conspirator in furtherance of the conspiracy; and

d.   Damages suffered by Plaintiff as a result of the conspiracy.

**Existence of an Agreement**

103.     Defendants knowingly and willfully conspired to alienate Plaintiff from his children, ZM (age 15) and LM (11), and destroy his parental relationship.

104.     Defendants entered into a concerted agreement, explicit or implicit, to achieve this unlawful objective by undermining Plaintiff's parental rights, severing his bond with the children, and promoting Defendant Lorick as the de facto father.

105.     This agreement is evidenced by Defendants' consistent and deliberate actions aimed at alienating Plaintiff from his children and eroding their companionship and society.

**Intent to Harm Plaintiff**

106.     Defendants acted with specific intent to:

a.   Sever Plaintiff's parental relationship with his children permanently;

b.   Inflict severe emotional, reputational, and financial harm on Plaintiff; and

c.   Replace Plaintiff's role as the children's father with Defendant Lorick.

d.   Defendants demonstrated this intent through repeated and malicious actions, including defamation, denial of visitation, and undue influence over the children to foster hatred and rejection of Plaintiff.

**Overt Acts in Furtherance of the Conspiracy**

107.     Defendants jointly committed the following overt acts in furtherance of their conspiratorial objectives:

37

a. **Violation of Court Orders**:

    i. Repeatedly and willfully violating court-ordered visitation schedules, denying Plaintiff his right to contact and associate with his children.

b. **Relocation Without Notice**:

    i. Relocating the children to North Carolina without proper notice or consent, obstructing Plaintiff's access and ability to maintain a relationship.

c. **Defamation**:

    i. Making false and defamatory statements to the children, including labeling Plaintiff a "kidnapper," "abuser," and "liar," with no evidence or corroboration.

d. **Interference with Communication**:

    i. Intercepting, monitoring, and withholding Plaintiff's phone calls, letters, and gifts to the children, ensuring they remained isolated from Plaintiff's influence.

e. **Coaching and Alienation**:

    i. Coaching the children to reject Plaintiff's gifts, communication, and relationship, instilling animosity and severing emotional bonds.

  f. **False Paternity Claims**:

    i. Encouraging and facilitating the children's belief that Defendant Lorick, not Plaintiff, was their legitimate father, "daddy."

**Damages Suffered by Plaintiff**

108. As a direct and proximate result of Defendants' conspiracy, Plaintiff has suffered:

  a. **Emotional Distress**:

    i. Severe psychological trauma, including symptoms consistent with Complex Post-Traumatic Stress Disorder (C-PTSD), depression, anxiety, and profound grief over the loss of his children's companionship.

  b. **Loss of Parental Relationship**:

    i. Deprivation of society and companionship with his children, leading to permanent alienation and estrangement.

  c. **Reputational Harm**:

    i. Falsely portrayed as abusive, neglectful, and unfit as a parent, resulting in humiliation and loss of credibility.

  d. **Economic Losses**:

i.   Substantial legal expenses and financial burdens incurred in attempts to enforce visitation, challenge false statements, and restore the parental relationship.

e.   **Constitutional Violations:**

i.   Denial of Plaintiff's fundamental rights to freedom of association and companionship with his children, causing irreparable harm to his familial bonds.

**Pattern of Conspiratorial Conduct**

109.   Over the course of eight years, Defendants engaged in a sustained, coordinated effort to alienate Plaintiff from his children and destroy their relationship.

110.   Defendants acted maliciously and with reckless disregard for court orders, using procedural manipulations to delay and obstruct Plaintiff's rights and achieve their unlawful objectives.

111.   The concerted nature of Defendants' actions reflects a clear conspiracy to harm Plaintiff and sever his parental relationship.

**Relief Requested**

112.   WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award:

**Compensatory Damages:** An amount to be determined at trial, no less than $75,000 per year per child, for the emotional distress, reputational harm, and economic losses caused by Defendants' conspiracy.

**Punitive Damages**: To punish Defendants for their malicious, intentional conduct and deter similar behavior in the future.

**Injunctive Relief**: Requiring Defendants to cease their conspiratorial activities and facilitate the restoration of Plaintiff's relationship with his children.

**Costs of Suit**: Including reasonable attorneys' fees and related expenses.

**Other Relief**: Such other and further relief as this Court deems just and proper.

## Count 5: Common Law Fraud Under Illinois and Federal Law

**Incorporation of Other Allegations**

113.    Plaintiff realleges and incorporates by reference all preceding and following paragraphs as though fully set forth herein.

**Legal Standard for Common Law Fraud**

114.    **Under Illinois Law:** To establish a claim for common law fraud, Plaintiff must demonstrate:

a.   The defendant made a false statement of material fact;

41

b. The defendant knew the statement was false;

c. The defendant intended to induce the plaintiff to act based on the false statement;

d. The plaintiff justifiably relied on the false statement; and

e. The plaintiff suffered damages as a result of the reliance.

115. **Under Federal Law:** To establish common law fraud, Plaintiff must demonstrate:

a. The defendant made a representation of fact;

b. The representation was false;

c. The false representation was material;

d. The defendant knew the representation was false or acted with reckless disregard for the truth;

e. The defendant intended to deceive the plaintiff;

f. The plaintiff justifiably relied on the false representation; and

g. The plaintiff suffered damages as a result of the reliance.

**False Statements of Material Fact**

116. Defendants Wroe and Lorick made multiple false statements of material fact, including but not limited to:

a.  Defendant Wroe falsely testified that Plaintiff had no significant connection to his children.

b.  Defendant Wroe falsely testified that Plaintiff abandoned his children and was indifferent to their needs.

c.  Defendant Wroe falsely testified that Plaintiff was a flight risk.

d.  Defendant Lorick falsely stated under oath that he was the biological father of Plaintiff's children.

e.  Defendants falsely claimed they intended to relocate to North Carolina in July 2020 when they had been residing there since January.

f.  Defendants falsely testified that Plaintiff's children rejected his gifts and no longer desired a relationship with him.

**Knowledge of Falsity**

117.  Defendants knew these statements were false at the time they were made.

118.  Defendant Wroe's prior communications to family members acknowledged Plaintiff's exceptional care for the children, contradicting her direct testimony.

119.  Defendants made these false statements with reckless disregard for the truth, intending to mislead the court and harm Plaintiff.

**Intent to Induce Action**

120. Defendants intended to induce the court to act on their false statements, securing:

    a. Favorable rulings such as approval of their relocation;

    b. Reduced visitation rights for Plaintiff; and

    c. Diminished enforcement of Plaintiff's parental rights.

121. Defendants also intended to manipulate the children into alienating themselves from Plaintiff through false narratives.

**Justifiable Reliance**

122. The court, Plaintiff, and the children justifiably relied on Defendants' false statements, believing them to be true.

123. The court's rulings, based on these misrepresentations, further undermined Plaintiff's parental rights and contributed to the alienation of his children.

**Damages**

124. Plaintiff suffered significant harm, including:

    a. Emotional distress and psychological trauma;

    b. Reputational damage stemming from the court's reliance on false accusations; and

      c.   Financial losses due to litigation, opportunity costs, and the erosion of his relationship with his children.

125.   Plaintiff's familial bonds were irreparably harmed, as the children internalized and acted upon Defendants' false narratives.

**Pattern of Fraudulent Conduct**

126.   Over the course of eight plus years, Defendants engaged in a systematic pattern of fraud, including but not limited to:

      a.   Falsely testifying in court to secure favorable rulings;

      b.   Filing deceptive motions and withholding relocation information from Plaintiff;

      c.   Coaching the children to believe and repeat falsehoods about Plaintiff; and

      d.   Misleading the court and third parties to deny Plaintiff access to his children and damage his reputation.

**Defendants' Intent and Willful Misconduct**

127.   Defendants' actions reflect a deliberate, calculated effort to harm Plaintiff and deprive him of his constitutional rights, including his rights to freedom of association and companionship with his children.

128.   The sustained and coordinated nature of their conduct demonstrates willful intent to deceive and injure Plaintiff.

**Relief Requested**

129.    WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award:

    a.  **Compensatory Damages**: In an amount to be determined at trial, but no less than $75,000 per year per child, for emotional distress, reputational harm, and financial losses caused by Defendants' fraudulent conduct;

    b.  **Punitive Damages**: To punish Defendants for their egregious, willful, and malicious behavior and to deter future misconduct;

    c.  **Injunctive Relief**: Requiring Defendants to cease their fraudulent actions and facilitate the restoration of Plaintiff's relationship with his children;

    d.  **Costs of Suit**: Including reasonable attorneys' fees and expenses; and

    e.  **Other Relief**: Such other and further relief as this Court deems just and proper.

## Count 6: Tortious Interference with Child Custody under Illinois Law

**Incorporation of Other Allegations**

130. Plaintiff realleges and incorporates by reference all preceding and following paragraphs as though fully set forth herein.

**Legal Standard**

131. To establish a claim for tortious interference with child custody under Illinois law, Plaintiff must demonstrate:

    a. The existence of a valid and enforceable custody order;

    b. Defendants' knowledge of the custody order;

    c. Defendants' intentional and willful interference with Plaintiff's rights under the custody order; and

    d. Damages suffered as a result of the interference.

**Existence of a Valid Custody Order**

132. At all relevant times, there existed an enforceable custody order governing Plaintiff's rights to custody and visitation with his minor children, ZM (age 15) and LM (11).

133. The custody order granted Plaintiff regular visitation and communication rights, which had remained in effect and have not been lawfully terminated in Indiana.

**Defendants' Knowledge of the Custody Order**

134. Defendants **Wroe** and **Lorick** had actual and constructive knowledge of the custody order.

47

135.    Defendants were informed of the custody order through personal service, court filings, and repeated communications from Plaintiff.

**Defendants' Intentional and Willful Interference**

136.    Defendants knowingly and willfully interfered with Plaintiff's custody and visitation rights by engaging in the following actions:

a. **Denial of Visitation**: Repeatedly and systematically denying Plaintiff's court-ordered visitation with his children over eight years.

b. **Relocation Without Notice**: Relocating the children to North Carolina without providing proper notice, obtaining court authorization, or securing Plaintiff's consent, in violation of the custody order.

c. **Interference with Communication**: Intercepting, withholding, and failing to deliver letters, gifts, and other forms of communication from Plaintiff to his children.

d. **Defamation to Alienate**: Making false and defamatory statements to the children, including calling Plaintiff a "kidnapper," "abuser," and "liar," to undermine Plaintiff's relationship and alienate the children from him.

e. **Coaching and Monitoring**: Coaching the children to reject Plaintiff's contact and actively monitoring calls to disrupt private

48

communication. This includes instructing both children to designate any interaction an "argument" in order to prematurely terminate the call.

**Specific Intent to Deprive Plaintiff of Custody and Companionship**

137.    Defendants undertook these actions with the deliberate and malicious intent to:

a.   Deprive Plaintiff of his lawful custody and visitation rights.

b.   Sever the emotional bond and companionship between Plaintiff and his children.

c.   Elevate Defendant Lorick as the de facto father while denying and displacing Plaintiff's parental role.

**Damages Suffered by Plaintiff**

138.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered:

a.   **Loss of Companionship**: Deprivation of the society, companionship, and affection of his children, causing profound emotional pain.

b.   **Severe Emotional Distress**: Including anxiety, depression, and anguish due to the inability to maintain a meaningful relationship with his children.

49

    c. **Reputational Harm**: Damage to Plaintiff's reputation as a parent, including being falsely portrayed as abusive and neglectful.

    d. **Economic Losses**: Substantial legal expenses and opportunity costs incurred in attempts to enforce his parental rights and challenge Defendants' misconduct.

**Malicious Conduct Warranting Punitive Damages**

139.    Defendants' actions were willful, malicious, and demonstrated a flagrant disregard for Plaintiff's parental rights and the best interests of the children. Such conduct warrants the imposition of punitive damages to deter similar misconduct.

**Relief Requested**

140.    WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award:

    a. **Compensatory Damages**: An amount to be determined at trial for the loss of companionship, emotional distress, reputational harm, and economic losses caused by Defendants' conduct.

    b. **Punitive Damages**: To punish Defendants for their malicious and intentional conduct and to deter similar actions in the future.

   c. **Injunctive Relief**: Compelling Defendants to comply with existing custody orders and cease interfering with Plaintiff's parental rights.

   d. **Costs of Suit**: Including reasonable attorneys' fees and related expenses.

   e. **Other Relief**: Such other and further relief as this Court deems just and proper.

## Count 7: Common Law Intrusion Upon Seclusion under Restatement (Second) of Torts § 652B

**Incorporation of Other Allegations**

141.   Plaintiff realleges and incorporates by reference all preceding and following paragraphs as though fully set forth herein.

**Legal Standard**

142.   Under the Restatement (Second) of Torts § 652B, a claim for **Intrusion Upon Seclusion** requires Plaintiff to establish:

   a. The defendant intentionally intruded, physically or otherwise, upon the solitude or seclusion of another or their private affairs or concerns;

   b. The intrusion would be highly offensive to a reasonable person; and

   c. The matter intruded upon was private and not public.

**Defendants' Intentional Intrusion**

143.    Defendants **Wroe** and **Lorick** intentionally intruded upon Plaintiff's privacy by engaging in the following actions:

    a.    **Monitoring, recording, transcribing, and documenting Plaintiff's private phone calls** with his children during court-ordered visitation without Plaintiff's knowledge or consent.

    b.    **Intercepting and eavesdropping** on Plaintiff's private communications with his children to undermine his parental role and collect private information.

    c.    Systematically **violating Plaintiff's expectation of privacy** during court-ordered parent-child calls, as protected by the **Indiana Parenting Time Guidelines**, which prohibit monitoring, interference, intimidation, or coaching in parent-child communications.

**Private Nature of the Communications**

144.    Plaintiff had a reasonable expectation of privacy, explicitly provided for in the Indiana Parenting Time Guidelines, in his communications with his children, particularly during court-ordered visitation calls intended to facilitate a parent-child relationship.

145.    These communications were private in nature, involving deeply personal and familial matters shielded from intrusion by third parties.

**Knowledge and Intent**

146.    Defendants acted knowingly and with intent to invade Plaintiff's privacy.

147.    Defendants' repeated monitoring and interference with Plaintiff's communications were deliberate, persistent, and designed to gather private information for malicious purposes, including alienating Plaintiff from his children, asserting specific defamations against him, and undermining his parental rights.

**Highly Offensive Nature of the Intrusion**

148.    Defendants' conduct would be highly offensive to a reasonable person, as it:

    a.    Involved a systematic invasion of private, court-protected family communications.

    b.    Demonstrated willful disregard for Plaintiff's privacy rights under court orders and parenting guidelines.

    c.    Exploited a parent-child relationship to interfere with Plaintiff's parental rights and gather sensitive information.

**7. Damages Suffered by Plaintiff**

149.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered substantial damages, including:

a. **Severe Emotional Distress**: Including anxiety, depression, and a sense of violation due to the systematic invasion of his privacy.

b. **Loss of Privacy**: Defendants' continuous intrusion deprived Plaintiff of the basic dignity of private communication with his children.

c. **Damage to Parent-Child Relationship**: Defendants' actions undermined Plaintiff's relationship with his children causing irreparable harm to the familial bond.

d. **Reputational Harm**: Defendants' actions damaged Plaintiff's standing as a father by portraying him as unfit and untrustworthy.

e. **Economic Losses**: Plaintiff incurred significant expenses in attempting to enforce his privacy rights and repair the relationship with his children.

**Malicious and Willful Conduct Warranting Punitive Damages**

150.    Defendants' actions were willful, malicious, and executed with a complete disregard for Plaintiff's privacy rights and the best interests of the children. Such egregious conduct warrants punitive damages to punish Defendants and deter similar behavior in the future.

**Relief Requested**

151.     WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award:

a.   **Compensatory Damages**: For emotional distress, loss of privacy, and damage to Plaintiff's relationship with his children, in an amount to be determined at trial.

b.   **Statutory or Punitive Damages**: To punish Defendants for their willful and malicious invasion of privacy and to deter similar conduct.

c.   **Injunctive Relief**: Prohibiting Defendants from further interfering with Plaintiff's communications with his children or otherwise intruding upon his seclusion.

d.   **Costs of Suit**: Including reasonable attorneys' fees and expenses incurred by Plaintiff.

e.   **Further Relief**: Such other and further relief as this Court deems just and proper.

## Count 8: Interception and Disclosure of Wire, Oral, or Electronic Communications under 18 U.S.C. § 2511 and 2520

**Incorporation of Other Allegations**

152.     Plaintiff realleges and incorporates by reference all preceding and following paragraphs as though fully set forth herein.

**Legal Standard for Claim Under 18 U.S.C. § 2511**

153.     To establish a claim for interception and disclosure of wire, oral, or electronic communications under 18 U.S.C. § 2511, Plaintiff must show:

a. **Intentional Interception**: Defendants intentionally intercepted, endeavored to intercept, or procured another to intercept a wire, oral, or electronic communication;

b. **Expectation of Privacy**: The communication was private, and Plaintiff had a justifiable expectation of privacy;

c. **Unauthorized Interception**: The interception was made without consent and was not authorized by law; and

d. **Harm**: Plaintiff suffered harm as a result of the interception.

**Defendants' Violations of 18 U.S.C. § 2511**

154.     Defendants **Wroe** and **Lorick** knowingly and intentionally violated 18 U.S.C. § 2511 by engaging in the following conduct:

a. **Interception of Private Communications**

i.  Defendants monitored, recorded, and documented Plaintiff's private phone and video calls with his minor children during court-ordered private visitation.

56

ii.   These communications involved private family matters,
protected by Plaintiff's reasonable expectation of privacy.

b.   **Unauthorized Conduct**

i.   The interception was carried out without Plaintiff's consent
or legal authorization.

ii.   Defendants acted in violation of:

1.   Illinois all-party consent laws;

2.   Federal wiretapping laws;

3.   Indiana Parenting Time Guidelines, which explicitly
prohibit intrusion into parent-child communications;
and

4.   Court orders governing Plaintiff's parenting time.

155.   **Exploitation of Intercepted Communications**

a.   Defendants used the intercepted communications to alienate
Plaintiff from his children, damaging his parental relationship.

b.   Intercepted content was leveraged to present false claims in
custody-related legal proceedings, including efforts to terminate
Plaintiff's visitation rights by direct quotations of what Defendants
disagreed with.

**Knowledge and Willfulness**

156.   Defendants':

   a.   actions were **intentional, knowing, and willful**, with the express

   purpose of invading Plaintiff's privacy and interfering with his

   parental rights.

   b.   openly admitted to monitoring Plaintiff's communications,

   demonstrating a deliberate **disregard for his privacy** and legal

   protections.

**Harm to Plaintiff**

157.   As a direct and proximate result of Defendants' conduct, Plaintiff

   suffered:

   a.   **Severe Emotional Distress**: Anxiety, fear, and loss of trust due to the

   invasion of his privacy.

   b.   **Damage to Parent-Child Relationship**: Alienation and erosion of

   trust caused by Defendants' misuse of intercepted communications.

   c.   **Loss of Privacy**: Continuous and systematic intrusion into Plaintiff's

   personal communications.

   d.   Use of private subject matter to **defame Plaintiff**.

   e.   Intrusion into private conversations to **deny interests children had in**

   **common with Plaintiff**, including terminating a discussion of such

benign topics as "soccer" or prohibiting learning outside the classroom.

    f.   That the children were ***forced* to have all conversations able to be monitored on speakerphone**, and then misstate that it was their idea.

    g.   That the children were ***forced* to turn off video to secrete Defendants' presence** and were then forced to state they were alone and not being monitored, and the lack of video was *their* idea.

    h.   d. **Economic Harm**: Increased litigation costs to address Defendants' unlawful behavior and repair the harm caused.

**Malicious and Willful Conduct**

158.   Defendants' actions were willful, malicious, and carried out with the intent to harm Plaintiff by invading his privacy, interfering with his parental rights, and obstructing his ability to maintain a meaningful relationship with his children.

**Relief Requested**

159.   Under 18 U.S.C. § 2520, Plaintiff is entitled to civil relief for Defendants' violations of 18 U.S.C. § 2511.

160. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award the following relief,

    a. **Actual Damages**: For emotional distress, loss of privacy, and damage to Plaintiff's relationship with his children;

    b. **Statutory Damages**: Pursuant to 18 U.S.C. § 2520(c)(2), including the greater of $100 per day of violation per child or $10,000, totaling at least $114,400 over eight plus years

    c. **Punitive Damages**: To deter Defendants from engaging in similar unlawful conduct in the future;

    d. **Injunctive Relief**: Prohibiting Defendants from further interception or disclosure of Plaintiff's communications;

    e. **Reasonable Attorney's Fees and Costs**: As provided under 18 U.S.C. § 2520; and

    f. Such other and **further relief** as this Court deems just and proper.

## Count 9: Eavesdropping Under 720 ILCS 5/14-1 et seq.

**Incorporation of Other Allegations**

161. Plaintiff realleges and incorporates by reference all preceding and following paragraphs as though fully set forth herein.

60

**Legal Standard for Eavesdropping Under Illinois Law**

162.    The Illinois Eavesdropping Act, **720 ILCS 5/14-1 et seq.**, prohibits the use of an eavesdropping device to hear, transmit, or record all or any part of a private conversation unless **all parties to the conversation consent** or the activity is specifically exempted by statute.

g.    To establish a claim under **720 ILCS 5/14-2**, Plaintiff must demonstrate:

h.    **Knowingly and Intentionally**: The defendant acted knowingly and intentionally;

i.    **Use of an Eavesdropping Device**: The defendant used an eavesdropping device to intercept communications;

j.    **Private Conversation**: The conversation was private, and the defendant was not a party to it without the consent of all participants; and

k.    **Recording or Interception**: The defendant recorded, transmitted, or intercepted the conversation without legal authorization.

**Defendants' Violations of 720 ILCS 5/14-2**

163.    Defendants **Wroe** and **Lorick** intentionally violated Illinois' eavesdropping statute by engaging in the following conduct:

l.  **Monitoring, recording, transcribing, and documenting Plaintiff's private phone calls with his minor children** during court-ordered visitation without Plaintiff's consent;

m.  Conducting these acts in violation of Illinois' all-party consent laws, applicable court orders, and the **Indiana Parenting Time Guidelines**, which explicitly prohibit monitoring parent-child communications;

n.  Admitting to intercepting and monitoring these communications and using the intercepted information to interfere with Plaintiff's visitation rights and to alienate Plaintiff from his children.

**Lack of Legal Authorization**

164.    Defendants' actions were not authorized by any exemption under **720 ILCS 5/14-3**. Their surreptitious interception of Plaintiff's private conversations violated the explicit prohibitions of the **Illinois Eavesdropping Act**.

**Private Nature of the Conversations**

165.    Plaintiff's phone calls with his minor children during court-ordered visitation were private, and Plaintiff held a reasonable expectation of privacy. This expectation was supported by:

o.  The **Indiana Parenting Time Guidelines**, which prohibit intrusion into parent-child communications;

p.   The context of court-ordered visitation, where privacy is essential to preserve the integrity of the parent-child relationship; and

q.   The parent-child relationship itself, which inherently demands a degree of seclusion from third-party interference.

**Highly Offensive and Malicious Nature of Defendants' Conduct**

166.   Defendants' actions were highly offensive and egregious for the following reasons:

r.   The conduct involved **systematic and surreptitious monitoring** of Plaintiff's private communications;

s.   Defendants used these recordings to further alienate Plaintiff from his children and interfere with his parental rights;

t.   The monitoring violated Plaintiff's legal rights and protections afforded by Illinois law, as well as court-ordered visitation guidelines.

u.   Further harms as described *supra* under 18 U.S.C. § 2511.

**Damages Suffered by Plaintiff**

167.   As a direct and proximate result of Defendants' unlawful eavesdropping, Plaintiff has suffered:

v.   **Severe emotional distress**, including anxiety, humiliation, and feelings of helplessness;

w.   **Loss of privacy** in his personal communications with his children;

63

x. **Damage to his relationship with his children**, caused by the misuse of intercepted communications;

y. **Reputational harm**, as Defendants used intercepted conversations to falsely portray Plaintiff as unfit; and

z. **Economic damages**, including substantial legal expenses incurred to address Defendants' misconduct and enforce his rights.

**Malicious and Willful Conduct Warranting Punitive Damages**

168.    Defendants openly admitted to monitoring and recording Plaintiff's court-ordered calls with his children, using speakerphone and disabling video to conceal their presence.

169.    These actions violated Illinois' all-party consent law, further demonstrating Defendants' intentional invasion of Plaintiff's privacy.

170.    Defendants' conduct was willful, malicious, and carried out with reckless disregard for Plaintiff's legal rights. Their systematic invasion of Plaintiff's privacy and misuse of personal communications warrant the imposition of punitive damages to deter similar future violations.

**Relief Requested**

171.    WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award:

64

a. **Compensatory Damages**: At least $100 per occurrence, per child, totaling $114,400 over the past eight years, for emotional distress, loss of privacy, and damage to Plaintiff's relationship with his children;

b. **Punitive Damages**: To punish Defendants for their willful and malicious conduct and deter future violations;

c. **Injunctive Relief**: A permanent injunction prohibiting Defendants from further eavesdropping on Plaintiff's communications;

d. **Costs of Suit**: Including reasonable attorney's fees and litigation expenses, as permitted by **720 ILCS 5/14-6**; and

e. **Further Relief**: Such other and further relief as this Court deems just and proper.

## Count 10: Declaratory Judgment Under 28 U.S.C. § 2201-2202 and *Mitchum v. Foster*[1]

**Incorporation of Other Allegations**

---

[1] 407 U.S. 225 (1972): "The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights -- to protect the people from unconstitutional action under color of state law, "whether that action be executive, legislative, or judicial." Ex parte Virginia, 100 U.S. at 100 U. S. 346. In carrying out that purpose, Congress plainly authorized the federal courts to issue injunctions in § 1983 actions by expressly authorizing a "suit in equity" as *one* of the means of redress. And this Court long ago recognized that federal injunctive relief against a state court proceeding can, in some circumstances, be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights. Ex parte Young, 209 U. S. 123; …"

172.     Plaintiff realleges and incorporates by reference all preceding and following paragraphs as though fully set forth herein.

**Legal Basis for Declaratory Judgment**

173.     **Federal Declaratory Judgment Act:** Under 28 U.S.C. § 2201, a federal court may declare the rights and legal relations of any interested party in an actual controversy within its jurisdiction. This declaratory judgment carries the same force and effect as a final judgment. Under 28 U.S.C. § 2202, a court may grant additional relief as necessary based on the declaratory judgment.

174.     **Actual Controversy:** There exists an actual controversy between Plaintiff and Defendants concerning due process violations, unconstitutionally vague state court orders, and the improper transfer of jurisdiction from Indiana to North Carolina. These actions have deprived Plaintiff of his fundamental liberty interest in maintaining a relationship with his children.

175.     **Applicability of *Mitchum v. Foster*:** In *Mitchum v. Foster*, 407 U.S. 225 (1972), the U.S. Supreme Court held that federal courts may enjoin state court actions when claims arise under 42 U.S.C. § 1983, an exception to the Anti-Injunction Act (28 U.S.C. § 2283). Plaintiff seeks declaratory relief to address violations of his constitutional rights and procedural due process.

**Factual Basis for Declaratory Relief**

**Due Process Violations**

66

176. All Indiana court orders, particularly those of August 9, 2022, and April 30, 2019, lack findings of fact supporting their conclusions, rendering them **unconstitutionally vague and unenforceable**.

a. The August 9, 2022 order improperly attributed equal fault to both parties for the failure of the visitation facility specified by the trial judge in his April 30, 2019 order.

b. Indiana appellate courts improperly dismissed Plaintiff's 2022 appeal because the 2019 judge's court order specified a visitation facility that did not exist.

c. Indiana appellate courts dismissed Plaintiff's appeals also for procedural reasons, such as labeling Plaintiff's briefs as "prolix," rather than addressing the merits, violating his right to due process.

d. The transfer of jurisdiction from Indiana to North Carolina occurred without notice to Plaintiff, depriving him of an opportunity to object.

e. The North Carolina court issued visitation modification orders on August 27, 2024, in an ex parte hearing where Plaintiff had no meaningful opportunity to defend himself, and was barred from even listening.

177. **Fundamental Liberty Interest:** Plaintiff has a constitutionally protected liberty interest in maintaining a relationship with his children under the Due

67

1  Process and Equal Protection Clauses. The state courts' actions

2  systematically deprived him of this interest without adequate procedural

3  safeguards.

4  178.  **Judicial Overreach: Indiana and North Carolina** Judges acted outside

5  their jurisdiction by issuing orders that violated Plaintiff's constitutional

6  rights. These actions, taken in bad faith, constitute a waiver of judicial

7  immunity.

8  **Relief Requested**

9  179.  **Declaratory Relief:** Plaintiff seeks a declaratory judgment affirming his

10  constitutional rights and invalidating state court actions that infringe upon

11  those rights. Specifically, Plaintiff requests that this Court:

12  a.  Declare that Plaintiff has a fundamental liberty interest in

13  maintaining a relationship with his children, which has been

14  infringed by Defendants' actions.

15  b.  Declare that Plaintiff is entitled to visitation rights, including:

16  i.  Three unmonitored FaceTime calls per week with video

17  enabled, as outlined in the Indiana Parenting Time

18  Guidelines.

          ii.   Monthly in-person visitation on the first Saturday of each month, from 9:00 AM to 4:00 PM, per the August 9, 2022, order.

c.  Declare that Defendants' denial of visitation violates Plaintiff's due process and equal protection rights.

d.  Declare that state court orders lacking findings of fact to support their conclusions are unenforceable and void.

e.  Declare the Indiana appellate court's dismissal of Plaintiff's appeal unconstitutional for failing to consider the merits of his case.

f.  Declare the transfer of jurisdiction from Indiana to North Carolina invalid for lack of notice and due process.

g.  Declare the August 9, 2022, and April 30, 2019, orders null and void *ab initio* for failure to meet constitutional standards.

h.  Declare that service of process on a parent during court-ordered visitation, where the parent has no voluntary presence in the state, is invalid.

i.  Declare that Indiana and North Carolina trial and appellate Judges exceeded their jurisdiction, rendering themselves personally liable for their constitutional violations.

180.    **Injunctive Relief:** Plaintiff also seeks preliminary and permanent injunctions prohibiting enforcement of all unconstitutional state court orders affecting his parental rights.

**Damages and Costs**

181.    Reasonable attorney's fees and litigation costs as provided by law.

182.    Such other and further relief as the Court deems just and proper.

## Count 11: Declaratory and Injunctive Relief for Due Process and Equal Protection Violations in Enforcement of Fraudulent Attorney's Fee Award

**Incorporation of Other Allegations**

183.    Plaintiff realleges and incorporates by reference all preceding and following paragraphs as though fully set forth herein.

**Legal Basis for Declaratory Judgment**

184.    Under **28 U.S.C. § 2201**, a federal court may declare the rights and legal relations of any interested party seeking such declaration in the case of an **actual controversy** within its jurisdiction.

185.    Under **28 U.S.C. § 2202**, further necessary or proper relief may be granted based on the declaratory judgment, including injunctive relief.

**Actual Controversy: The Unconstitutional Attorney's Fee Award as a Tool of Coercion and Retaliation Against Plaintiff's Due Process Rights**

186.     An **actual controversy** exists under **28 U.S.C. § 2201** because Defendants, with the aid of a knowingly improper and unconstitutional attorney's fee award issued in **August 2022**, are now seeking to **imprison Plaintiff in North Carolina for failure to pay an award that was fraudulently assigned, unsupported by any factual basis, and intended to chill Plaintiff's access to the courts**.

187.     The **Indiana trial judge issued the August 2022 attorney's fee award despite clear evidence that Plaintiff was poor and Defendants had tenfold his income.**

188.     The award was:

a.     **Made in bad faith and in violation of Plaintiff's due process rights** under the **Fourteenth Amendment**.

b.     **Inconsistent with prior judicial findings regarding Plaintiff's financial ability**, as the **court had already determined that Plaintiff's child support obligation must be set at the lowest possible level** due to his inability to pay anything beyond that.

c.     **Contrary to the findings of the Indiana District Attorney's office**, which had **reviewed Plaintiff's finances and confirmed that Plaintiff lacked the ability to pay additional amounts** beyond his child support obligations.

71

d. Contrary to Defendants' relative wealth, **as they testified their willingness to pay for Plaintiff's full visitation travel costs** in order to facilitate the trial court's acquiescence to defendants who had moved prior to filing for relocation.

e. **Imposed without a single factual finding to justify it**, demonstrating that it was a **targeted and malicious effort to retaliate against Plaintiff for asserting his legal rights**.

189. The judge's decision to assign such an **excessive and unjustified fee award** was not an exercise of judicial discretion but rather an **act of malice under color of state law**, intended to **cripple Plaintiff's ability to seek legal redress and to punish him for prevailing on the facts while standing up for his parental rights**.

190. **The fraudulent nature of the award is underscored by the fact that Defendant Wroe and Lorick had violated nearly every provision of the court order granting Plaintiff visitation—by a rate of 99.9%—and yet, rather than sanctioning her for her willful violations of court orders, the judge instead penalized victim Plaintiff without justification**.

**Defendants' Use of the Fraudulent Award to Enforce Jurisdiction in North Carolina and Threaten Imprisonment**

191. Plaintiff's ex-wife and her counsel are now exploiting this unconstitutional fee award to haul Plaintiff into North Carolina court, where

72

1    a judge may, at his or her discretion, imprison Plaintiff indefinitely until the

2    improper fee is paid.

3    192.    North Carolina courts will take the Indiana order as given and will not

4    review its validity, meaning that Plaintiff has no meaningful recourse at the

5    state level.

6    193.    North Carolina's **contempt enforcement mechanisms allow a judge to**

7    **imprison a party indefinitely for failure to pay a financial judgment**,

8    creating a scenario where Plaintiff faces potential **years in jail for an award**

9    **that was improperly assigned and constitutionally invalid**.

10    194.    Plaintiff has already suffered **direct harm**, as North Carolina courts have

11    issued an **August 2024 order terminating Plaintiff's visitation due to his**

12    **inability to appear in North Carolina**, a ruling that flows directly from the

13    fraudulent fee award and further exacerbates the deprivation of Plaintiff's

14    parental rights.

15    **Federal and State Legal Authority Prohibiting This Conduct**

16    195.    **Imprisonment for a fraudulently assigned attorney's fee award violates**

17    **fundamental constitutional protections**, including:

18    a.    **The Due Process Clause of the Fourteenth Amendment**, which

19    prohibits states from depriving any person of liberty or property

20    without fair process (*M.L.B. v. S.L.J.*, 519 U.S. 102 (1996)).

73

b. **The Equal Protection Clause of the Fourteenth Amendment**, which prohibits financial barriers from being used to deny fundamental rights such as parental access (*M.L.B. v. S.L.J.*, id).

c. **The Eighth Amendment's prohibition on excessive fines and cruel and unusual punishment**, because North Carolina seeks to **imprison Plaintiff indefinitely for a financial debt tied to a legally defective judgment**.

d. **42 U.S.C. § 1983**, which provides a remedy for individuals whose constitutional rights have been violated under color of state law, as the Indiana judge and North Carolina courts are **acting in concert to deprive Plaintiff of his constitutional rights**.

e. **North Carolina General Statutes § 50-13.6**, which limits attorney fee awards in child custody cases to only those made in good faith—an award granted for the **purpose of chilling due process** does not qualify.

f. **The Indiana Parenting Time Guidelines**, which state that interference with court-ordered visitation is a serious matter—yet instead of enforcing Plaintiff's rights, the courts have chosen to imprison him for challenging Defendants' violations of his visitation.

**Interference with Parental Rights and the Use of Imprisonment as a Tool of Coercion**

74

196. The **use of contempt proceedings in North Carolina as a mechanism to interfere with Plaintiff's parental rights is an unconstitutional deprivation of Plaintiff's fundamental liberty interests**.

197. The **August 2024 order terminating Plaintiff's visitation must be declared unconstitutional** because it was heard without opposition and predicated entirely on a fraudulent financial penalty.

198. A **monetary judgment—particularly one granted in bad faith—should never be used as the justification for separating a parent from his children**.

199. The **violence of imprisonment is being used as an improper coercive tool** to silence Plaintiff and prevent him from challenging the ongoing due process violations in his case.

**Request for Declaratory Relief**

200. Plaintiff seeks a declaratory judgment clarifying that:

a. The **attorney's fee award issued in August 2022 was unconstitutional** and improperly assigned.

b. **North Carolina's enforcement of this fraudulent fee award through contempt is unconstitutional** because it:

iii. Would result in unlawful **imprisonment for debt**, violating the **Due Process Clause** and the **Eighth Amendment**.

        iv. **Seeks to punish Plaintiff with incarceration despite the underlying judgment being defective**.

        v. **Interferes with Plaintiff's fundamental parental rights by using a financial sanction as a basis for blocking visitation**.

   c. The **August 2024 order terminating Plaintiff's visitation must be declared unconstitutional and void for barring Plaintiff's particpation**.

**Request for Injunctive Relief**

201. Plaintiff seeks **preliminary and permanent injunctive relief** prohibiting Defendants from:

   a. **Using North Carolina's contempt enforcement mechanisms to imprison Plaintiff for failure to pay an unconstitutional fee award**.

   b. **Enforcing the August 2024 order terminating visitation, as it was issued on the basis of an unlawful financial barrier**.

   c. **Continuing to assert North Carolina jurisdiction over Plaintiff based on the fraudulent fee award**.

   d. **Preventing Plaintiff from appearing remotely in North Carolina proceedings where his liberty is at stake**.

**Urgency of Relief and Necessity for Immediate Judicial Intervention**

202. Courts have consistently recognized that the **denial of parental access constitutes irreparable harm**, warranting emergency intervention:

    a. The **U.S. Supreme Court and federal courts** have held that parental rights are **fundamental under the Fourteenth Amendment**, and their deprivation requires heightened scrutiny. See *Troxel v. Granville*, 530 U.S. 57 (2000).

    b. Courts have **presumed irreparable harm** in cases where a **constitutional violation is at stake**, meaning Plaintiff need not prove further injury beyond the ongoing loss of his rights. See *Henderson v. Gil* (recognizing that the loss of custody and access to one's children constitutes irreparable harm).

    c. The **Second Circuit and multiple federal courts** have ruled that **where constitutional rights are at stake, monetary damages alone cannot provide an adequate remedy**, and courts must act swiftly to prevent further harm. See *M.L.B. v. S.L.J.*, 519 U.S. 102 (1996).

203. Every day that passes without declaratory and injunctive relief is another day that Plaintiff is **unjustly deprived of all live contact with his children**—an **extreme and ongoing harm** that deepens with each moment that this unconstitutional order remains in effect. The **denial of parental contact is irreparable**, and there is no justification for allowing such a fundamental deprivation to continue.

77

204.    Given the severity of the ongoing constitutional violations, the Court should immediately:

    a. **Issue an emergency hearing to review the matter**, ensuring that irreparable harm is addressed before further damage occurs.

    b. **Grant a temporary restraining order (TRO) and preliminary injunction** restoring Plaintiff's parental visitation rights pending final resolution of the case.

    c. **Declare that the enforcement of an unconstitutional attorney's fee award to justify the imprisonment of Plaintiff is impermissible under federal law**.

**Further Urgent Relief and Request for Federal Referral for Criminal Investigation**

205.    Plaintiff alleges that the **Indiana trial judge acted with deliberate malice and intent to deprive Plaintiff of his constitutional rights** by issuing an August 2022 attorney's fee award that:

    a. **Was contrary to all factual evidence, including Defendant's own stipulations**, demonstrating it was an intentional punitive act rather than a judicial determination.

    b. **Was designed to financially cripple Plaintiff, chill his access to the courts, and deter further litigation**, rather than serving any lawful judicial purpose.

78

  c. **Had no legal or factual basis and was an arbitrary exercise of judicial power under color of law**, making it not a judicial ruling, but an unconstitutional act of oppression.

206. The deliberate issuance of a **fraudulent and malicious attorney's fee award**, **for the purpose of financially incapacitating Plaintiff and obstructing his parental rights**, constitutes a **deprivation of rights under color of state law**, in **violation of 18 U.S.C. § 242**, which prohibits willful deprivations of constitutional rights by officials acting under state authority.

207. While **judicial immunity generally protects judges from civil liability**, it does **not** apply where a judge:

  a. **Acts with criminal intent** to deprive a litigant of constitutional rights (*Mireles v. Waco*, 502 U.S. 9 (1991)).

  b. **Issues an order in complete absence of jurisdiction** or in a manner knowingly inconsistent with the law (*Stump v. Sparkman*, 435 U.S. 349 (1978)).

  c. **Uses judicial authority as a tool of oppression**, rather than as an instrument of fair adjudication.

  d. The U.S. Supreme Court has confirmed that **judges can be held criminally liable under 18 U.S.C. § 242 for willful constitutional violations** in *United States v. Lanier*, 520 U.S. 259 (1997). The Court

1        held that **judicial immunity does not shield judges from criminal**

2        **prosecution when they knowingly and willfully deprive individuals**

3        **of constitutional rights**. In this case, the Indiana trial judge

4        knowingly issued an **improper attorney's fee award without factual**

5        **basis or due process, designed to financially cripple Plaintiff and**

6        **obstruct his parental rights**, making it not merely an erroneous

7        ruling but an unconstitutional act carried out under color of state

8        law.

9        208.    Plaintiff contends that the Indiana trial judge's **abuse of power and**

10        **willful constitutional violations** were **not judicial acts**, but rather an

11        **exercise of extrajudicial authority intended to punish and silence Plaintiff**

12        **for asserting his rights in court**.

13  **Request for Federal Referral and Criminal Investigation**

14        209.    Plaintiff respectfully requests that this Court formally refer this matter to

15        the **U.S. Attorney's Office for investigation and potential prosecution**

16        under **18 U.S.C. § 242**, as the Indiana trial judge acted **maliciously and in**

17        **clear violation of Plaintiff's fundamental rights**.

18        210.    Plaintiff requests that this Court issue a **formal order stating that the**

19        **August 2022 attorney's fee award was issued in violation of due process**

20        **and constituted an abuse of power under color of law, making it a**

21        **potential criminal act.**

211.     Plaintiff further requests that the **Court recognize that when a state's judicial process is weaponized to deprive a litigant of constitutional rights, federal intervention is not only appropriate but required.**

**Damages and Costs**

212.     Plaintiff **further seeks**:

    a.   Reasonable attorney's fees and litigation costs under applicable law.

    b.   Such other and further relief as this Court deems just and proper.

**Count 12: Injunctive Relief Under the All Writs Act, 28 U.S.C. § 1651, and 42 U.S.C. § 1983—Prevention of Enforcement of Unconstitutional Court Orders and Return of Children Based on Parental Alienation and Jurisdictional Violations**

**Incorporation of Other Allegations**

213.     Plaintiff realleges and incorporates by reference all preceding and following paragraphs as though fully set forth herein.

**Legal Framework for Injunctive Relief**

214.     Plaintiff seeks injunctive relief under the All Writs Act, 28 U.S.C. § 1651, and 42 U.S.C. § 1983 to stop ongoing violations of his constitutional rights to due process, equal protection, and the preservation of his parental rights. The relief is based on the unconstitutional nature of prior court orders, the improper jurisdictional transfer of custody proceedings, the denial of

81

1      discovery, and the obstruction of justice through the failure to state facts in

2      support of the Indiana and North Carolina court's orders. The extensive and

3      ongoing parental alienation constitutes child abuse, necessitating the return

4      of the children to Plaintiff.

**Elements for Injunctive Relief**

215.    To obtain injunctive relief, Plaintiff must demonstrate the following elements:

    a.  **Standing**: Plaintiff has standing to seek injunctive relief as he has suffered and continues to suffer harm from the alienation of his children, the enforcement of unconstitutional court orders, the denial of discovery, and the unlawful transfer of jurisdiction.

    b.  **Violation of Constitutional Rights**: The Defendant's actions have violated Plaintiff's rights, including:

        1.  The unlawful and unconstitutional enforcement of vague and due-process-deficient court orders.

        2.  The improper jurisdictional transfer of the custody case from Indiana to North Carolina without due process, transparency, or proper notice.

        3.  Parental alienation that constitutes child abuse and neglect of the children.

82

4. Deprivation of Plaintiff's parental rights without due process or valid court justification.

5. Obstruction of justice under 18 U.S.C. § 1512 through the denial of discovery and the failure to state facts in support of court orders, preventing Plaintiff from fully litigating his case.

c. **Irreparable Harm**: Plaintiff faces irreparable harm as continued parental alienation, unconstitutional jurisdictional actions, denial of discovery, and the enforcement of improper court orders are causing significant emotional distress to the children and Plaintiff, which cannot be rectified by monetary damages alone.

d. **Balance of Equities**: The balance of equities favors Plaintiff, as preventing the enforcement of unconstitutional court orders and returning the children is an immediate remedy to prevent further harm, while the Defendants' interests do not outweigh the harm being caused.

e. **Public Interest**: The public interest is served by protecting constitutional rights, preventing child abuse, and ensuring that children are not subjected to emotional harm through parental alienation and improper legal maneuvers.

**Facts Satisfying the Elements**

216.     Plaintiff incorporates all preceding allegations in the case, detailing the ongoing parental alienation, unconstitutional nature of prior court orders, jurisdictional defects, and obstruction of justice.

217.     **Unconstitutional Orders**: The prior court orders from Indiana, Illinois, and North Carolina were obtained without due process and are constitutionally vague. These orders impose restrictions on Plaintiff's access to his children based on unsupported allegations and have been used to support the Defendant's alienating actions.

218.     **Jurisdictional Violations**: The transfer of jurisdiction from Indiana to North Carolina was improper and unconstitutional. The transfer occurred without Plaintiff's knowledge, without a proper hearing, and through private communications between judicial officers, violating fundamental due process rights. North Carolina courts, therefore, lack valid jurisdiction over the matter, rendering all subsequent court orders void.

219.     **Parental Alienation as Child Abuse**: The Defendant has engaged in extensive parental alienation, manipulating the children and causing them to reject their father without justifiable reason. This ongoing behavior constitutes child abuse under federal and state law.

220.     **Lack of Due Process and Obstruction of Justice**: The state courts have failed to provide Plaintiff with meaningful hearings, proper notice, and an opportunity to challenge the jurisdictional transfer and the alienating

84

1    behaviors. Additionally, the courts have denied Plaintiff access to discovery

2    and have failed to state supporting facts in their orders, preventing Plaintiff

3    from properly contesting the rulings. This constitutes obstruction of justice

4    under 18 U.S.C. § 1512.

**Immediate and Irreparable Harm**

221.    The continued enforcement of unconstitutional court orders, improper jurisdictional maneuvers, denial of discovery, and the alienation of the children from Plaintiff are causing irreparable harm to both the children and the Plaintiff. The children are suffering emotional damage due to the parental alienation, and the Plaintiff's constitutional rights are being violated. The immediate return of the children to Plaintiff's custody is necessary to halt further harm and provide a stable and safe environment for the children.

**Relief Sought**

222.    **Prevention of Enforcement of Unconstitutional Court Orders**: An injunction preventing the enforcement of all prior court orders from Indiana, Illinois, and North Carolina, save for the original protective order. These orders are void due to their vagueness, the improper jurisdictional transfer, the lack of due process in their issuance, and the obstruction of justice in their enforcement.

223. **Immediate Return of the Children**: An injunction requiring the immediate return of ZM and LM to Plaintiff's custody. The ongoing parental alienation constitutes child abuse, and its severe and ongoing nature justifies the return of the children to the Plaintiff's care pending a full state best interests hearing.

224. **Vacating North Carolina Court Orders**: Declare that the North Carolina court lacks jurisdiction due to the improper transfer and lack of due process. Any orders issued by North Carolina should be vacated.

225. **Reinstatement of the Original Protective Order**: Reinstate the Illinois protective order as the only valid court order in this case and return the children to Plaintiff's care, as originally granted in Illinois.

226. **In the alternative,**

a. **Cease Alienating Behavior**: Order Defendant to cease all alienating behaviors, including interference with Plaintiff's communication and visitation rights.

b. **Enforce the Indiana Parenting Time Guidelines**: Require Defendants to comply with existing court orders for parenting time, including three unmonitored FaceTime/Skype calls per week and ongoing monthly in-person visitation, at Defendants' cost, as per the last order.

**Additional Relief Sought**

227.    **Prompt State Court Review**: Mandate that the appropriate state court conduct a thorough and expedited review of the children's best interests, ensuring compliance with due process and equal protection requirements.

228.    **Attorney's Fees and Costs**: Award reasonable attorney's fees and costs incurred in pursuing this claim.

229.    **Further Relief**: Grant such other and further relief as this Court deems just and proper.

## Count 13: Habeas Corpus under 28 U.S.C. § 2241, Indiana Code § 34-25.5-7-1, and North Carolina General Statutes Chapter 17

**Incorporation of Other Allegations**

230.    Plaintiff realleges and incorporates by reference all preceding and following paragraphs as though fully set forth herein.

**Legal Authority**

231.    Plaintiff brings this claim pursuant to **28 U.S.C. § 2241**, which permits federal courts to issue writs of habeas corpus where a person is restrained in violation of the Constitution or federal law. Additionally, **Indiana Code § 34-25.5-7-1** and **North Carolina General Statutes Chapter 17** provide state habeas corpus relief when an individual is unlawfully restrained of their liberty, including the wrongful deprivation of fundamental parental rights.

**Elements Required for Relief**

232.    To obtain habeas corpus relief, Plaintiff must establish:

    a.    **Restraint of Liberty** – That he has been unlawfully deprived of a fundamental right.

    b.    **Violation of Due Process** – That the deprivation was without procedural due process of law.

    c.    **Jurisdictional Defect** – That the court issuing the order lacked jurisdiction or proceeded in a manner inconsistent with due process.

**Factual Background**

233.    **Prior Custodial Jurisdiction in Indiana:** Plaintiff, an Illinois resident, has maintained a longstanding custodial and parental relationship with his minor children, who were previously subject to an **Indiana court's custody orders**. At all relevant times, **Indiana had continuing, exclusive jurisdiction** over custody matters under the **Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Ind. Code § 31-21-5-1 et seq.**

234.    **Unilateral Transfer of Jurisdiction Without Notice or Hearing:** Without providing Plaintiff **any notice or an opportunity to be heard**, Defendants:

    a.    **Privately communicated** with an Indiana court, and

b.  **Transferred custody jurisdiction to North Carolina** without an evidentiary hearing, in violation of Plaintiff's procedural due process rights under the **Fifth and Fourteenth Amendments**.

235.  **Ex Parte Custodial Determination in North Carolina:** After assuming jurisdiction, the **North Carolina court conducted an ex parte hearing** on August 2024, without allowing Plaintiff to **present evidence, cross-examine witnesses, or challenge the basis for the custody modification**. Plaintiff was not even permitted to silently attend the hearing.

236.  **Constructive Termination of Parental Rights:** The North Carolina court issued an order effectively **terminating Plaintiff's parental rights**, despite the absence of adversarial-vetted **findings of fact and conclusions of law**, rendering the order facially **invalid under North Carolina law and federal due process standards**.

237.  **Denial of Due Process and Fundamental Fairness:** The actions of the **North Carolina court, coupled with Indiana's improper transfer of jurisdiction, amount to a complete deprivation of Plaintiff's fundamental parental rights without due process of law**. The **U.S. Supreme Court has long recognized the right to family integrity as a fundamental liberty interest protected by the Fourteenth Amendment** (*Santosky v. Kramer*, 455 U.S. 745, 753 (1982)). The failure to provide a meaningful opportunity to be

89

1    heard constitutes a **structural due process violation warranting habeas**

2    **relief**.

3  **Legal Argument**

4    238.    **Plaintiff's Parental Rights Are a Protected Liberty Interest:** The

5    **Supreme Court has repeatedly affirmed that parents have a fundamental**

6    **liberty interest in the care, custody, and control of their children** (*Troxel v.*

7    *Granville*, 530 U.S. 57, 65 (2000)). This right cannot be infringed **without**

8    **strict adherence to procedural due process**. The complete denial of notice

9    and an opportunity to be heard before transferring jurisdiction and

10   modifying custody **renders the entire proceeding constitutionally**

11   **defective**.

12   239.    **Unconstitutional Transfer of Jurisdiction Violates the Due Process**

13   **Clause:** Indiana improperly transferred jurisdiction **without a mandatory**

14   **jurisdictional hearing under the UCCJEA**. The lack of **notice and meaningful**

15   **participation** constitutes a due process violation, making the transfer legally

16   void. A **void judgment can be attacked at any time, including through**

17   **habeas corpus relief.**

18   240.    **Custody Determination in North Carolina is a Nullity Due to Procedural**

19   **Defects:** The North Carolina court issued a **custodial determination without**

20   **proper jurisdiction** and without **factual findings**. A judgment entered

21   **without jurisdiction is void ab initio** and subject to collateral attack via

90

1    habeas corpus. Habeas relief is warranted where a parent has been

2    deprived of custody through such unlawful means (see, e.g., *Stanley v.*

3    *Illinois*, 405 U.S. 645, 658 (1972)).

4    241.    **Indiana Code § 34-25.5-7-1 Provides Additional Habeas Protections:**

5    Indiana law explicitly recognizes **habeas corpus as a remedy for individuals**

6    **who are unlawfully restrained in their liberty**, including parents whose

7    custodial rights have been unlawfully denied. Here, Indiana violated

8    Plaintiff's rights by **transferring jurisdiction improperly**, necessitating relief

9    under its state habeas statute.

10   **Relief Sought**

11   242.    WHEREFORE, Plaintiff respectfully requests that this Court:

12   a.   **Issue a writ of habeas corpus** declaring the jurisdictional transfer to

13   North Carolina **void ab initio** for lack of due process.

14   b.   **Declare the August 27, 2024, ex parte order unconstitutional and**

15   **unenforceable** due to the absence of jurisdiction and procedural

16   due process violations.

17   c.   **Declare the August 9, 2022, order unconstitutional and**

18   **unenforceable** due to the absence of findings supporting its

19   conclusions and for being unconstitutionally vague.

    d. **Restore Indiana's original jurisdiction** over custody proceedings and order a proper hearing in accordance with constitutional due process requirements.

    e. **Return the Children to Plaintiff:** The Indiana court deemed Plaintiff a fit parent: "Under Father's care the children were intelligent, healthy, well-behaved and well-socialized." versus Defendant's open child abuse through their interference and alienation.

    f. **Grant any other relief this Court deems just and proper**, including declaratory and injunctive relief.

## Count 14: Civil RICO Claim Under Indiana Code § 35-45-6-2 and 18 U.S.C. § 1962

**Incorporation of Other Allegations**

243.    Plaintiff realleges and incorporates by reference all preceding and following paragraphs as though fully set forth herein.

**Legal Authority**

244.    Plaintiff brings this claim under **Indiana Code § 35-45-6-2,** which prohibits knowingly receiving proceeds derived from a pattern of racketeering activity or participating in such activity. Additionally, Plaintiff asserts claims under **18 U.S.C. § 1962(c),** the **federal RICO statute**, which

1    prohibits conducting an enterprise's affairs through a pattern of

2    racketeering activity.

3    245.    Under **Indiana Code § 34-24-2-6** and **18 U.S.C. § 1964(c)**, Plaintiff is

4    entitled to civil remedies, including treble damages, attorney's fees, and

5    injunctive relief.

6    **Elements Required for Relief**

7    246.    To prevail on a civil RICO claim, Plaintiff must establish:

8    a.    Defendants Wroe, Lorick, their attorneys, and certain judicial actors

9    operated as an **association-in-fact enterprise**, engaging in a

10    coordinated scheme to financially exhaust Plaintiff, obstruct his legal

11    challenges, fraudulently attempt to acquire premarital assets,

12    admitted theft of assets of the marital estate before division under

13    final decree, punitive division of assets, and alienate him from his

14    children. The enterprise functions through fraudulent legal filings,

15    improper judicial influence, and coercive financial penalties

16    designed to force Plaintiff's compliance and enrich Defendants. The

17    enterprise's activities are not sporadic but part of a structured and

18    ongoing pattern, spanning multiple jurisdictions (Indiana, Illinois,

19    North Carolina) and over nearly a decade of litigation.

20    b.    **Conduct of the Enterprise** – Defendants directed or participated in

21    the enterprise's affairs.

93

c. **Pattern of Racketeering Activity** – At least two predicate acts of fraud, extortion, obstruction, or other offenses within a 10-year period.

d. **Engagement in Interstate Commerce** – The enterprise affected interstate commerce.

e. **Injury to Business or Property** – Plaintiff suffered damages as a result of the racketeering activity.

**Predicate Facts Satisfying the Elements**

247.  Plaintiff was involved in the interstate (**IL-IN interstate commerce**) rehabilitation of single-family housing units and vacation rentals for out-of-state guests.

248.  **Obstruction of Justice (18 U.S.C. § 1503)** – Judicial officials and state actors engaged in obstruction by **intentionally denying appeals to cover up their and lower courts' misconduct** and to prevent Plaintiff from obtaining relief.

a. **The trial court and appellate court selectively ignored overwhelming evidence** that Defendant Wroe engaged in a pattern of fraudulent behavior.

b. The **court's refusal to enforce its own orders** while punishing Plaintiff for attempting to enforce them demonstrates a systemic abuse of judicial discretion.

c. **Deliberate misapplication of procedural rules** was used to dismiss Plaintiff's appeals on technicalities rather than addressing the merits.

d. By finding its own facts in direct contradiction to the findings of the trial court judge, the 2022 Indiana appellate court decision knew of the **factual insufficiency of the trial court order**.

e. That Indiana Appellate court responded to the denial of due process of an improper trial court order by denying the due process of an appeal, as guaranteed under the Indiana constitution.

f. The Indiana supreme court denied review of the trial and appellate court order, thus establishing the color of law in Indiana as inconsistent with the protections of the US constitution.

g. By **not opposing any of Plaintiff's appeal briefs or even at trial, Defendants were reliant on the bias** of the constitutionally corrupt Indiana and North Carolina courts.

h. By publishing the opinion, without any legal argument or case law, the Indiana Appellate Court wanted to enshrine its overarching **violation of the constitution as the discretionary law of the land**.

249. **Extortion (Hobbs Act, 18 U.S.C. § 1951)** – State officials and Defendants conspired to financially burden Plaintiff and coerce him into compliance through:

a. **Fraudulent assessments of attorney's fees** ($8,000) despite Plaintiff prevailing on major factual issues in custody litigation.

b. Contrary to statute, awarding Defendant Wroe **one hundred percent of the marital estate**, despite her tenfold higher household income.

c. **Threats of contempt proceedings, fines and imprisonment** aimed at silencing Plaintiff's complaints about judicial misconduct.

d. **Unlawful fines** and **procedural delays** designed to force Plaintiff into legal exhaustion and surrender.

e. **Retaliatory judicial rulings** reducing Plaintiff's parenting time as punishment for challenging fraudulent legal actions.

250. **Bribery or Corrupt Influence (18 U.S.C. § 666(a)(1) et seq.)** – Defendant Wroe, her attorneys, and certain judicial actors engaged in bribery or undue influence by:

    a. **Judicial favoritism** toward Wroe and her legal team, granting rulings without evidentiary support and selectively enforcing laws.

    b. **Ex parte communications** between Wroe's attorneys and judicial officers, influencing court rulings outside of formal proceedings.

    c. **Improper financial incentives or preferential treatment** of at least $5000 (a)(1)(A)(i) given to legal professionals aligned with the state's and Defendants' interests.

251. **Fraud in Court Proceedings (18 U.S.C. §§ 1341, 1343)** – Defendants engaged in fraud and obstruction in legal proceedings by:

    a. **Knowingly submitting false statements** and affidavits to justify their misconduct.

    b. **Fabricating allegations of abuse and trial absence**s without supporting evidence.

    c. **Wire and mail fraud through electronic and postal filings that contained material misrepresentations** designed to deceive the court and harm Plaintiff.

    d. **Selective exclusion of key evidence that would have exonerated Plaintiff** and exposed Defendants' fraudulent conduct.

252. **Retaliatory Collusion -** Defendants, acting under color of law and in concert with judicial officers, have engaged in a systemic effort to obstruct

97

1    my access to justice through the deliberate and unjustified labeling of

2    Plaintiff's filings as "frivolous" and "prolix." This prejudicial designation—

3    devoid of factual findings or evidentiary support—constitutes a form of

4    **judicial signaling** intended to bias subsequent courts against Plaintiff,

5    effectively blacklisting Plaintiff within the judicial system. This institutional

6    **stigmatization is used as a pretext** to deny Plaintiff due process and serves

7    as a pattern of judicial collusion, violating Plaintiff's constitutional right to a

8    fair and impartial hearing under the Fifth and Fourteenth Amendments.

9    253.    Further, opposing counsel has knowingly exploited these **unwarranted**

10    **judicial labels**, perpetuating a fraud upon the court by reinforcing

11    unsubstantiated allegations to subsequent tribunals, thereby depriving

12    Plaintiff of meaningful legal review. This pattern of retaliation and

13    deprivation of rights constitutes an ongoing violation under 42 U.S.C. § 1983

14    and is tantamount to a RICO predicate act of obstructing justice and

15    interfering with the lawful exercise of constitutional rights.

16    254.    **Judicial Misconduct and Retaliation** – Courts refused to enforce

17    standing custody orders, punished Plaintiff for raising due process concerns,

18    and selectively penalized him for seeking legal remedies.

19    255.    **Parental Kidnapping and Concealment** (August 3, 2016 Incident) –

20    Defendants Wroe and Lorick disappeared with the children, violating

21    Plaintiff's legal rights and requiring a **four-day search** involving law

enforcement and a **protective order**. The concealment was intended to **gain a legal advantage, including jurisdiction, through deception**.

256. **Obstruction of Justice in Appellate Courts** – Despite the Indiana Constitution guaranteeing an absolute right to appeal, Plaintiff was denied review of a legally defective custody modification order due to procedural manipulations that violated constitutional due process.

257. **Pattern of Racketeering Activity** – Defendants engaged in a decade-long pattern of racketeering that included:

    a. **Judicially sanctioned parental alienation.**

    b. **Fraudulent legal filings and suppression of exonerating evidence.**

    c. **Use of contempt threats and fraudulent financial penalties** to suppress Plaintiff's legal rights.

    d. **Tampering with court processes and collusion with state actors to evade accountability.**

**Engagement in Interstate Commerce**

258. **Defendants' conduct spanned multiple states** (Indiana, Illinois, and North Carolina) and involved fraudulent financial transactions, legal filings across state lines, and the use of electronic communications in furtherance of racketeering activities.

259.   Plaintiff was involved in the interstate (**IL-IN interstate commerce**) rehabilitation of single-family housing units and vacation rentals for out-of-state guests (id.)

**Injury to Business or Property**

260.   Plaintiff has suffered substantial financial damages, including:

a.   **Unlawful court-imposed fees and fines**.

b.   **Loss of his lawful property in direct violation of Indiana marital division laws**.

c.   **Costs of extensive litigation to challenge fraudulent rulings**.

d.   **Opportunity costs in a decade-long legal battle for visitation and fair treatment**.

e.   **Loss of employment opportunities due to ongoing legal harassment and financial coercion**.

**Relief Sought**

261.   WHEREFORE, Plaintiff respectfully requests that this Court:

a.   **Declare that Defendants violated the civil RICO statute (Indiana Code § 35-45-6-2 and 18 U.S.C. § 1962).**

b.   **Award treble damages for financial losses incurred due to the racketeering activity** under Indiana Code § 34-24-2-6 and 18 U.S.C. § 1964(c).

100

    c. **Grant injunctive relief preventing further unlawful acts by the Defendants.**

    d. **Award attorney's fees and litigation costs** as provided by RICO.

    e. **Refer Defendants' conduct to the United States Attorney's Office for criminal prosecution under**:

        i. **18 U.S.C. § 241 (Conspiracy Against Rights)**

        ii. **18 U.S.C. § 242 (Deprivation of Rights Under Color of Law)**

        iii. **18 U.S.C. § 1341, 1343 (Fraud in Legal Proceedings)**

        iv. **18 U.S.C. § 1503 (Obstruction of Justice)**

        v. **18 U.S.C. § 1951 (Extortion via Legal Threats and Court Sanctions)**

    f. **Request a federal grand jury** investigation into the conspiracy against Plaintiff's rights, as Defendants' actions involve systemic judicial corruption, fraud, and deprivation of constitutional protections.

    g. **Grant any other relief** this Court deems just and proper.

## Count 15: Violation of Civil Rights Under 42 U.S.C. § 1983 (First and Fourteenth Amendments)

**Incorporation of Other Allegations**

262.     Plaintiff realleges and incorporates by reference all preceding and following paragraphs as though fully set forth herein.

**Legal Framework for 42 U.S.C. § 1983 Claim**

263.     **Elements of the Claim**:

To prevail under 42 U.S.C. § 1983, Plaintiff must establish:

a. **Action Under Color of State Law:** Defendants acted under state authority or in concert with state actors;

b. **Deprivation of Rights:** Defendants' actions deprived Plaintiff of rights secured by the U.S. Constitution or federal law; and

c. **Causation:** Defendants' actions were the direct and proximate cause of the constitutional violations.

**State-Led Attack on Constitutional Protections**

264.     When a state directly violates the U.S. Constitution and systematically denies federally protected rights, it engages in an **attack on federal authority** and the supremacy of constitutional law. In this case, Indiana and North Carolina courts, through their deliberate disregard of constitutional protections, have engaged in a form of state-sponsored deprivation, fundamentally undermining the rule of law.

265.     **Violation of Federal Supremacy:**

a. **The Supremacy Clause** (U.S. Const. Art. VI, Cl. 2) dictates that state laws and judicial rulings must not contravene federal constitutional protections. The actions of the Indiana and North Carolina courts have defied this mandate by failing to provide due process and equal protection under the law.

b. **State Actors as Federal Violators**: By intentionally denying Plaintiff procedural and substantive due process, these state courts have effectively challenged the supremacy of federal law, justifying federal intervention under 42 U.S.C. § 1983.

**Factual Basis**

266. **Protected Constitutional Rights**: Plaintiff has fundamental constitutional rights, including:

a. **Fourteenth Amendment – Due Process Clause**: The right to the care, custody, and management of his children;

b. **First Amendment – Freedom of Association**: The right to familial association with his children; and

c. **Fourteenth Amendment – Equal Protection Clause**: The right to equal treatment under the law.

**Defendants' Actions Under Color of State Law:**

267.    Plaintiff brings this claim under **42 U.S.C. § 1983**, which prohibits any person acting under color of state law from depriving an individual of their constitutional rights.

268.    Defendants **Wroe and others** acted under color of state law by **leveraging state court proceedings** to infringe upon Plaintiff's constitutional rights. Their actions were intertwined with state authority, creating a joint enterprise with state actors, as demonstrated by the following:

**Collusion with Indiana State Officials:**

a.   Defendants **obtained court rulings that excused** their repeated and admitted violations of visitation orders.

b.   The **Indiana trial court selectively enforced** visitation orders, refusing to hold Defendants accountable despite evidence that they had obstructed Plaintiff's access to his children.

c.   The **trial court entertained a year-long delay** after Defendants filed for relocation, **directly prejudicing Plaintiff** and undermining his rights.

d.   These delays were stopped only when plaintiff researched into defendants caseload and got the trial court to find the **proffered continuances without basis**.

**State-Enabled Obstruction of Plaintiff's Parental Rights:**

a. Defendants **moved out of state months before filing for permission**, knowing the court would later approve their actions, thereby making it harder for Plaintiff to maintain his visitation rights.

b. **The trial court ignored Defendants' admission that they had completely cut off Plaintiff's visitation**, treating this fundamental violation as irrelevant.

c. Defendants **disregarded trial court orders the day they were issued**, knowing they would not be enforced.

d. **Indiana courts refused to enforce their own visitation orders**, allowing Defendants to act with impunity.

e. **All appeals were unopposed**, yet despite overwhelming evidence and argument, they were summarily denied, showing that **Defendants' "success" in violating Plaintiff's rights did not require any legal effort**, certainly not $8000 worth, or proper argumentation.

f. The courts consistently ruled in Defendants' favor **without Defendants ever needing to establish a proper legal basis** under the applicable elements of child welfare or refuting the overwhelming evidence of alienation, visitation interference, and the complete marginalization of Plaintiff.

g. **Defendants used their own "successful" record of alienation as justification for further marginalization of Plaintiff**, arguing that because they had already reduced Plaintiff's involvement with the children to almost nothing, further involvement should not be restored as it would be "too difficult" to reintegrate him into their lives. This represents **a blatant attempt to benefit from their own misconduct**—a textbook example of unclean hands. Such an argument **could only succeed in a court that was complicit in the abrogation of a party's rights** and was acting in a **retaliatory, oppressive, and chilling manner.**

h. **Defendants never presented any substantive evidence** in support of their requested relief; instead, they made **conclusory statements**, whereas **Plaintiff provided extensive documentary evidence**—to the point that **Defendants stipulated to key facts**—yet this had **no effect on the trial court's rulings. Defendants operated as if they were color of state law**, merely declaring their interests and expecting the courts at both trial and appellate levels to oblige them without question—even when doing so required the **abrogation of due process, fundamental fairness, equity, and the right to appellate review**.

i. Another aspect of **Defendants acting under color of state law was how they used their court-sanctioned authority over custody to**

106

**mistreat, marginalize, and emotionally abuse the children**, further diminishing Plaintiff's rights and fundamental liberty interest in maintaining a parent-child relationship.

269.   **State-Sanctioned Retaliation Against Plaintiff:**

a.   When Plaintiff attempted to enforce his visitation rights, the trial court **punished him by assessing attorney's fees against him**, instead of holding Defendants accountable for 99.9% visitation order denial.

b.   State officials **denied Plaintiff's valid discovery requests**, enabling Defendants to withhold critical evidence that would have demonstrated further violations.

c.   The Indiana appellate court **refused to review Plaintiff's appeal** on the merits, despite the Indiana Constitution guaranteeing an "absolute" right to appellate review.

**Deprivation of Constitutional Rights**

270.   Defendants' actions, taken **in concert with state officials**, deprived Plaintiff of multiple constitutional protections:

271.   **Due Process Violations:**

a.   Enforcement of **vague, unsupported court orders** that lacked findings of fact and conclusions of law.

   b. **Ex parte rulings and dismissal of appeals** as "prolix" without proper judicial review.

   c. **Jurisdictional transfer to North Carolina** without notice or hearing.

272. **Equal Protection Violations**

   a. The Indiana courts **unequally enforced visitation** orders, holding Plaintiff to a different standard than Defendants.

   b. The judicial system's **leniency toward Defendants** allowed them to continue their campaign of parental alienation **without consequence**.

273. **First Amendment – Familial Association:**

   a. Defendants, with court approval, persistently obstructed Plaintiff's communication and visitation with his children, violating his First Amendment right to familial association.

**Lack of Immunity**

274. Under ***Dennis v. Sparks***, 449 U.S. 24 (1980), **private parties acting jointly with state officials are considered state actors and are not entitled to immunity under § 1983.** Defendants' **intentional use of state court mechanisms** to carry out constitutional violations makes them liable under federal law.

**Harm to Plaintiff**

108

275. Emotional and Economic Damages: As a direct and proximate result of Defendants' actions, Plaintiff has suffered:

a. **Severe emotional distress**, manifesting in physical symptoms such as anxiety, depression, headaches, joint pain and weakened immune system;

b. **Irreparable loss of meaningful contact with his children** during their minority;

c. **Reputational harm** due to Defendants' defamatory conduct; and

d. **Substantial economic losses**, including litigation expenses incurred to address these violations.

276. **Irreparable Harm**: Plaintiff's fundamental liberty interest in maintaining a relationship with his children cannot be restored through monetary compensation. Each day of separation deepens the estrangement, causing lasting damage.

**Relief Sought**

277. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award the following relief:

a. **Issue Declaratory Relief**

        i.   **Affirming Plaintiff's constitutional** rights under the Due Process, Equal Protection, and First Amendments;

     ii.   Declaring that the **enforcement of vague and unsupported state court orders violates federal constitutional standards**.

   iii.   **Declare that Defendants acted under color of state law** by conspiring with state officials to deprive Plaintiff of his constitutional rights;

b.   **Issue injunctive relief**:

        i.   **Prohibiting Defendants' enforcement of all Indiana and North Carolina court orders** that benefited Defendants' misconduct in restricting Plaintiffs association with his children;

     ii.   **Prohibit enforcement of any order awarding Defendants** attorney's fees or costs;

   iii.   To prevent further **state-facilitated violations of Plaintiff's parental rights**

   iv.   **Prohibiting Defendants from interfering with Plaintiff's visitation rights or communication with his children; and**

     v.   **Requiring Defendants to comply with court-ordered visitation and parenting time guidelines.**

110

      c. **Actual Damages:**

          i. **Actual Damages**: An amount to be determined at trial to compensate for emotional distress, reputational harm, and financial losses;

          ii. **Punitive Damages**: To punish Defendants for their willful and malicious conduct and deter similar behavior;

          iii. **Reasonable Attorney's Fees and Costs**: As provided under 42 U.S.C. § 1988; and

          iv. **Further Relief**: Such other and further relief as this Court deems just and proper.

## Count 16: Abuse of Process under Common Law

**Incorporation of Other Allegations**

278. Plaintiff realleges and incorporates by reference all preceding and following paragraphs as though fully set forth herein.

**Legal Framework for Abuse of Process:**

279. To establish a claim for abuse of process under common law, Plaintiff must show:

      a. Defendants used legal process in an improper or unlawful manner;

      b. Defendants acted with an ulterior motive unrelated to the proper purpose of the legal process; and

    c.   Plaintiff suffered harm as a result of Defendants' misuse of legal process.

**Facts Satisfying the Elements**

280.   **Improper Use of Legal Process**: Defendant Wroe, through her North Carolina attorney, used court proceedings for purposes unrelated to their stated objectives. Specifically:

    a.   Defendant Wroe filed a motion in North Carolina to modify Plaintiff's visitation rights, ostensibly to terminate Plaintiff's last form of contact with his children;

    b.   Defendant Wroe's true intent was to compel Plaintiff's physical presence in North Carolina to serve him with a contempt action for failure to pay attorney's fees, unrelated to the stated objective of the motion; and

    c.   The North Carolina judge facilitated this improper purpose by barring Plaintiff from defending himself or monitoring the proceedings, leading to a ruling in Defendant Wroe's favor cutting off Plaintiff's phone visitation.

281.   **Ulterior Motive**: Defendants acted with an ulterior motive, including:

    a.   Using the legal system to gain personal jurisdiction over Plaintiff for unrelated contempt proceedings;

b. Seeking to harass and financially burden Plaintiff through litigation unrelated to legitimate parental or custodial issues; and

c. Exploiting the legal process to coerce Plaintiff into paying attorney's fees, despite the inequity of such an order given Defendant Wroe's admitted contempt of prior visitation orders.

d. Judicial Complicity in Abuse of Process: The North Carolina judge contributed to the abuse of process by:

e. Refusing to allow Plaintiff to present a defense in the modification hearing;

f. Ordering Plaintiff to leave the courtroom and barring him from monitoring the proceedings; and

g. Entering a ruling that cut off Plaintiff's phone visitation, enabling Defendants to achieve their ulterior motive while depriving Plaintiff of his right to due process.

282. **Harm to Plaintiff**: As a direct and proximate result of Defendants' abuse of process, Plaintiff has suffered:

a. Severe emotional distress caused by the deprivation of his last form of visitation with his children;

b. Financial harm incurred in responding to improper litigation and defending against unrelated contempt proceedings;

c.  Further alienation from his children due to the severance of phone contact; and

d.  Damage to his reputation as a parent.

283.   **Malicious and Improper Conduct**: Defendants' actions demonstrate willful and malicious misuse of legal processes, warranting punitive damages to deter similar conduct in the future.

**Relief Requested**

284.   WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award:

a.  **Compensatory damages for emotional distress**, financial harm, and reputational damage in an amount to be determined at trial;

b.  **Punitive damages** to punish Defendants for their malicious conduct and deter similar actions in the future;

c.  **Injunctive relief** prohibiting Defendants from further misuse of legal processes to harass or intimidate Plaintiff;

d.  **Attorney's fees and litigation costs** as allowed by law; and

e.  Such other and **further relief** as this Court deems just and proper.

**Count 17: Improper Transfer of Jurisdiction and Violation of Due Process Rights Under 42 U.S.C. § 1983**

**Incorporation of Other Allegations**

285.     Plaintiff realleges and incorporates by reference all preceding and following paragraphs as though fully set forth herein.

**Legal Framework for 42 U.S.C. § 1983 Claim**

286.     **Elements of a 42 U.S.C. § 1983 Claim for Improper Transfer of Jurisdiction**: To establish a claim for the improper transfer of jurisdiction and violation of due process rights under § 1983, Plaintiff must demonstrate:

a.  **Action Under Color of State Law**: Defendants acted under the authority of state law or in concert with state officials;

b.  **Violation of Due Process**: Defendants deprived Plaintiff of his Fourteenth Amendment right to due process;

c.  **Notice and Opportunity to Be Heard**: Plaintiff was denied adequate notice and the opportunity to participate in the jurisdictional transfer process;

d.  **Irreparable Harm**: Plaintiff suffered irreparable harm as a result of the improper transfer; and

e. **Causation**: Defendants' actions directly caused the deprivation of Plaintiff's constitutional rights.

**Facts Satisfying the Elements**

287. **Improper Conduct Under Color of State Law**: At all relevant times, Defendant Wroe acted in concert with Indiana and North Carolina courts, under color of state law, to manipulate judicial processes and unlawfully transfer jurisdiction over Plaintiff's parental rights from Indiana to North Carolina in violation of due process requirements.

288. **Manipulation of Indiana Court Processes**: Defendants relocated to North Carolina before seeking permission from the Indiana court, anticipating that the court would fail to enforce Plaintiff's due process rights.

289. The Indiana court **transferred jurisdiction without a formal motion, notice to Plaintiff, or an evidentiary hearing**, depriving Plaintiff of his right to contest the transfer.

290. **Improper Acceptance of Jurisdiction by North Carolina Court**: The North Carolina court accepted jurisdiction without adherence to procedural safeguards.

291. Plaintiff was not provided proper notice or the opportunity to participate in the transfer of jurisdiction.

292.    The court issued adverse rulings on Plaintiff's parental rights despite the lack of lawful jurisdiction.

293.    **Due Process Violations in Transfer of Jurisdiction**: The transfer of jurisdiction failed to meet basic due process requirements, including:

    a.   Lack of a formal motion to transfer jurisdiction;

    b.   Absence of notice to Plaintiff regarding the proposed transfer;

    c.   Failure to hold a hearing on jurisdictional matters;

    d.   Denial of Plaintiff's right to present arguments opposing the transfer; and

    e.   Lack of a court order providing a lawful basis for the transfer.

294.    **Coordinated State Action**: The combined actions of Defendants and the Indiana and North Carolina courts demonstrate a nexus of coordinated activity sufficient to treat Defendant Wroe as a state actor:

295.    Indiana courts failed to enforce Plaintiff's visitation rights, enabling years of interference by Defendants;

296.    The courts of Indiana and North Carolina have adopted verbatim every proposed order by defendants while never citing once any evidence, argument or proposed order from Plaintiff;

297.    Defendants have violated every order starting on the day it was issued and they were not held in contempt;

298.    Defendants' admitted 99.9% violation of court order was completely ignored despite Defendants' stipulation to this fact, the central issue at the contempt and custody modification trial of 2022;

299.    Defendants filed for permission to relocate 6 months after their physical relocation from Indiana to Duram, Nort Carolina; and their relocation was not heard until 18 months later;

300.    The statutory factor of Defendants' refusal to cooperate in any visitation while they resided near Plaintiff, was ignored in granting permission for an uncooperative party now to move across the country;

301.    Defendant's willingness to pay for the cost of visitation, another statutory factor, by virtue of their order of magnitude claimed higher household income was similarly ignored; and

302.    North Carolina improperly assumed jurisdiction to facilitate Defendants' continued obstruction of Plaintiff's parental rights.

303.    **Void Proceedings in North Carolina**: The failure to follow due process renders all subsequent rulings and orders by the North Carolina court void ab initio. Without a lawful jurisdictional transfer, the court lacked authority to issue rulings affecting Plaintiff's parental rights.

118

**Harm to Plaintiff**

304. **Constitutional Deprivations**: As a direct and proximate result of Defendants' actions, Plaintiff suffered:

    a. Deprivation of his Fourteenth Amendment right to due process;

    b. Improper subjection to North Carolina jurisdiction without legal authority;

    c. Adverse rulings impacting Plaintiff's parental rights;

    d. Emotional distress and damage to his relationship with his children; and

    e. Ongoing violations of his constitutional rights.

305. **Emotional and Familial Harm**: The improper transfer and resulting rulings caused severe emotional distress and irreparable harm to Plaintiff's relationship with his children, particularly during their formative years.

**Relief Requested**

306. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award:

    a. **Declaratory Relief** affirming that the transfer of jurisdiction from Indiana to North Carolina was improper and violated Plaintiff's due

process rights and that the Indiana and North Carolina Judge acted in excess of their jurisdiction;

b. **Injunctive Relief** declaring void ab initio all orders issued by the North Carolina court that relied on the improper jurisdictional transfer;

c. **Compensatory Damages** in an amount to be determined at trial for emotional distress, reputational harm, and loss of parental rights;

d. **Punitive Damages** to punish Defendants' willful and malicious conduct and deter similar actions in the future;

e. **Reasonable Attorney's Fees** and Costs under 42 U.S.C. § 1988; and

f. Such other and **further relief** as this Court deems just and proper.

## Count 18: Violation of Civil Rights Under 42 U.S.C. § 1983 (First, Fifth and Fourteenth Amendments)

**Incorporation of Other Allegations**

307. Plaintiff realleges and incorporates by reference all preceding and following paragraphs as though fully set forth herein.

**Legal Framework for 42 U.S.C. § 1983 Claim**

308. **Elements of a 42 U.S.C. § 1983 Claim**: To establish a claim under § 1983 for violations of the First, Fifth, and Fourteenth Amendments, Plaintiff must demonstrate:

a. **Action Under Color of State Law**: Defendants acted under authority granted by state law or in concert with state actors;

b. **Deprivation of Constitutional Rights**: Defendants' actions deprived Plaintiff of rights secured by the Constitution or federal law; and

c. **Causation**: Defendants' actions were the direct and proximate cause of the deprivation of Plaintiff's constitutional rights.

**Facts Satisfying the Elements**

309.    **Protected Constitutional Rights**: Plaintiff has fundamental constitutional rights, including:

a. **Fourteenth Amendment** – Due Process Clause: The right to the care, custody, and management of his children;

b. **First Amendment** – Freedom of Association: The right to familial association with his children;

c. **Fourteenth Amendment** – Equal Protection Clause: The right to equal treatment under the law;

d. **Fifth Amendment** – Due Process Clause: Right to fair process.

**Defendants' Actions Under Color of State Law:**

310.    Plaintiff brings this claim under 42 U.S.C. § 1983, which prohibits any person acting under color of state law from depriving an individual of their constitutional rights.

311.    Defendants Wroe and others acted under color of state law by leveraging state court proceedings in both Indiana and North Carolina to infringe upon Plaintiff's constitutional rights.

312.    Their actions were intertwined with state authority, creating a joint enterprise with state actors, demonstrating a pattern of collusion and abuse of the judicial process.

313.    Defendants' violation of court orders started the day that the court order was issued. This would only occur if the defendants knew in advance that their deprivation of Plaintiff's rights, privileges, or immunities secured by the Constitution and laws would be upheld under color of state law.

**Collusion with Indiana State Officials:**

314.    Defendants obtained court rulings that excused their repeated and admitted violations of visitation orders.

315.    The Indiana trial court selectively enforced visitation orders, refusing to hold Defendants accountable despite evidence and admissions that they had obstructed Plaintiff's access to his children.

316.    The trial court entertained a year-long delay after Defendants filed for relocation, directly prejudicing Plaintiff and undermining his rights.

317.    Defendants violated court orders the day they were issued, knowing the court would not hold them accountable. This knowledge and immediate violation demonstrate that Defendants were acting under color of state law.

318.    The court granted rights to Plaintiff on paper, but never enforced those rights, and the outcome supported by the court was a near-total denial of Plaintiff's access to his children.

319.    The trial court accepted a late proposed order from Defendants which ignored in its findings the central issue of the case—the universal violation of the existing court order. This demonstrates collusion between the Defendants and the state of Indiana, placing the Defendants under color of state law and making them jointly and severally liable for the state's actions.

**State-Enabled Obstruction of Plaintiff's Parental Rights:**

320.    Defendants moved out of state months before filing for permission, knowing the court would later approve their actions, thereby making it harder for Plaintiff to maintain his visitation rights.

321.    The trial court ignored Defendants' admission that they had completely cut off Plaintiff's visitation, treating this fundamental violation as irrelevant.

322.    Indiana courts refused to enforce their own visitation orders, allowing Defendants to act with impunity.

323.     All appeals were unopposed, yet despite overwhelming evidence and argument, they were summarily denied, showing that Defendants' success in violating Plaintiff's rights did not require any legal effort or proper argumentation.

324.     The courts consistently ruled in Defendants' favor without them ever needing to establish a proper legal basis under the applicable elements of child welfare or refuting the overwhelming evidence of alienation, visitation interference, and the complete marginalization of Plaintiff.

325.     Defendants attempted to use their own record of alienation as justification for further marginalization of Plaintiff, arguing that because they had already reduced Plaintiff's involvement with the children to almost nothing, further involvement should not be restored as it would be "too difficult" to reintegrate him into their lives. This represents a blatant attempt to benefit from their own misconduct—a textbook example of unclean hands. Such an argument could only succeed in a court that was complicit in the abrogation of a party's rights and was acting in a retaliatory, oppressive, and chilling manner.

326.     Defendants never presented any substantive evidence in support of their requested relief; instead, they made conclusory statements, whereas Plaintiff provided extensive documentary evidence—to the point that

124

Defendants stipulated to Plaintiff's key facts—yet this had no effect on the trial court's rulings.

327. Defendants operated as if they were color of state law, merely declaring their interests and expecting the courts at both trial and appellate levels to oblige them without question—even when doing so required the abrogation of due process, fundamental fairness, equity, and the right to appellate review.

328. Another aspect of Defendants acting under color of state law was how they used their court-sanctioned authority over custody to mistreat, marginalize, and even emotionally abuse the children, further diminishing Plaintiff's rights and fundamental liberty interest in maintaining a parent-child relationship.

**State-Sanctioned Retaliation Against Plaintiff:**

329. When Plaintiff attempted to enforce his visitation rights, the trial court punished him by assessing attorney's fees against him, instead of holding Defendants accountable.

330. State officials denied Plaintiff's valid discovery requests, enabling Defendants to withhold critical evidence that would have demonstrated further violations.

331.    The Indiana appellate court refused to review Plaintiff's appeal on the merits, despite the Indiana Constitution guaranteeing an "absolute" and indivisible right to appellate review (art. 7, § 6).

**Inequitable Support for Relocation:**

332.    The Indiana trial court permitted Defendant Wroe to relocate with the children 800 miles away to North Carolina without evidence of necessity or a showing that the relocation was in the best interests of the children.

333.    The relocation was granted despite unrefuted evidence of Defendant Wroe's ongoing noncooperation with court orders, which typically disqualifies such requests.

334.    Plaintiff provided evidence that relocation would impose unreasonable costs and logistical barriers, further reducing his ability to maintain meaningful contact with his children.

**Unconstitutionally Vague and Unenforceable Court Order:**

335.    The August 9, 2022, Indiana custody modification order was vague and unenforceable, particularly regarding Plaintiff's visitation rights.

336.    This vagueness was exploited by Defendant Wroe to deny Plaintiff his visitation rights while simultaneously accusing him of failing to exercise those rights.

337. The North Carolina trial court perpetuated this vagueness by ignoring Plaintiff's efforts to clarify the order, further enabling Defendant Wroe's manipulation and obstruction of Plaintiff's rights.

**Private Communication and Denial of Due Process:**

338. Defendants engaged in private communications with the Indiana judge, resulting in the verbatim adoption of their proposed order without proper judicial oversight.

339. This violated Plaintiff's right to due process and his right under Indiana Trial Rule 52(A) for detailed findings of fact and conclusions of law.

340. This denial of due process left Plaintiff without a proper legal foundation to challenge adverse rulings.

**Arbitrary Assignment of Attorney's Fees:**

341. Despite Plaintiff prevailing on evidence that Defendant Wroe violated court orders almost universally, the Indiana trial court arbitrarily assigned attorney's fees against Plaintiff in favor of Defendant Wroe.

342. The court failed to specify which aspects of Plaintiff's litigation were deemed frivolous or unjustified, leaving the fee assignment unsupported by factual findings.

343.     The court acted with knowledge that the attorney's fee order was financially impossible for Plaintiff to pay, considering his modest income, necessary expenses, and his child support level.

344.     This fee assignment was inequitable and designed to chill Plaintiff's ability to assert his legal rights.

**Deprivation of Constitutional Rights:**

345.     Defendants' actions, taken in concert with state officials in Indiana and North Carolina, deprived Plaintiff of multiple constitutional protections:

   a.  **Due Process Violations**:

      i.   Enforcement of vague, unsupported court orders;

      ii.  ex parte rulings and dismissal of appeals as "prolix" without proper judicial review;

      iii. jurisdictional transfer to North Carolina without notice or hearing;

      iv.  denial of the opportunity to appear remotely at hearings;

      v.   refusal to allow Plaintiff to monitor hearings;

      vi.  proceeding as if Plaintiff's oppositions were unfiled;

      vii. ignoring Plaintiff's efforts to clarify ambiguous orders;

viii. systemic denial of due process in both Indiana and North
Carolina courts; and

ix. denial of procedural due process by the Indiana Supreme
Court.

b. **Equal Protection Violations**:

i. Unequal enforcement of visitation orders;

ii. leniency towards Defendants' alienation campaign; and

iii. arbitrary assignment of attorney's fees.

c. **First Amendment – Familial Association**:

i. Persistent obstruction of Plaintiff's communication and
visitation with his children; and

ii. reduction in visitation and chilling effect on Plaintiff's rights.

346. **Lack of Immunity**:

a. Under Dennis v. Sparks, 449 U.S. 24 (1980), private parties acting
jointly with state officials are considered state actors and are not
entitled to immunity under § 1983.

b. Defendants' intentional use of state court mechanisms to carry out
constitutional violations makes them liable under federal law.

347. **Harm to Plaintiff**:

a. **Constitutional Deprivations**: Denial of Fourteenth Amendment rights to procedural due process and equal protection; violation of First Amendment right to familial association; deprivation of equal protection through selective enforcement and judicial bias.

b. **Emotional and Familial Harm**: Severe emotional distress, reputational harm, and irreparable harm to Plaintiff's relationship with his children.

c. **Economic Damages**: Substantial economic losses, including litigation expenses.

d. **Irreparable Harm**: Loss of Plaintiff's fundamental liberty interest in maintaining a relationship with his children, which cannot be fully restored through monetary compensation.

**Relief Requested**

348.    WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award:

a. **Declaratory Relief**:

   i. Affirming that Defendants' actions violated Plaintiff's First, Fifth, and Fourteenth Amendment rights;

          ii. Declaring that the enforcement of vague and unsupported state court orders violates federal constitutional standards; and

          iii. Declaring that Defendants acted under color of state law by conspiring with state officials to deprive Plaintiff of his constitutional rights.

b. **Injunctive Relief**:

          i. Issuance of a stay on all ongoing North Carolina proceedings in this case;

          ii. Prohibiting Defendants from further interference with Plaintiff's parental rights and communication with his children;

          iii. Prohibiting Defendants' enforcement of all Indiana and North Carolina court orders that benefited Defendants' misconduct in restricting Plaintiff's association with his children;

          iv. Prohibiting enforcement of any order awarding Defendants attorney's fees or costs;

          v. To prevent further state-facilitated violations of Plaintiff's parental rights; and

vi. Requiring Defendants to comply with court-ordered visitation and parenting time guidelines.

c. **Compensatory Damages**: An amount to be determined at trial for emotional distress, reputational harm, and the deprivation of constitutional rights.

d. **Punitive Damages**: To punish Defendants for their willful and malicious conduct and deter similar behavior.

e. **Reasonable Attorney's Fees and Costs**: As provided under 42 U.S.C. § 1988.

f. **Further Relief**: Such other and further relief as this Court deems just and proper.

## Count 19: Fraud and Concealment Causing Emotional Distress and Deprivation of Due Process

**Incorporation of Other Allegations**

349. Plaintiff Myma realleges and incorporates by reference all preceding and following paragraphs as though fully set forth herein.

**Legal Framework for Fraud and Emotional Distress**

350. To assert a claim for fraud and emotional distress, Plaintiff must demonstrate:

351. **Fraud**:

132

a. A false representation or material omission by the defendant;

b. Knowledge of the falsehood or reckless disregard for the truth;

c. Intent to induce reliance on the misrepresentation or omission;

d. Justifiable reliance by the plaintiff; and

e. Damages resulting from the fraud.

352. **Intentional Infliction of Emotional Distress (IIED)**:

a. Extreme and outrageous conduct by the defendant;

b. Intent to cause severe emotional distress, or reckless disregard of the probability of causing such distress; and

c. Severe emotional distress suffered by the plaintiff.

**Facts Satisfying the Elements**

353. **Snatching of the Children**

a. In August 2016 and for the next six weeks Defendants secreted the children from Skokie to Indianapolis withholding their location.

b. It took four days to locate the children and serve an Illinois protective order against Defendants.

c. Defendants used the period of snatching to establish jurisdiction in Indiana.

354. **Concealment of Residential Insecurity**:

a. Defendants Wroe and Lorick knowingly withheld critical information about their relocation from Indiana, including the children's homelessness and temporary residence at various locations, for approximately six months prior to requesting formal relocation permission.

b. This concealment allowed Defendants to mislead the Indiana trial court into granting a relocation order without considering the impact of residential insecurity on the children's well-being.

355. **Fraud on the Indiana Trial Court**:

a. Defendants intentionally misrepresented their living circumstances in filings and testimony, portraying themselves as having stable housing while they were actively concealing the children's lack of permanent residence.

b. These misrepresentations were material to the court's decisions regarding relocation and parental custody rights.

c. By withholding evidence of residential instability, Defendants obstructed Plaintiff's ability to argue that the relocation was neither in the children's best interests nor compliant with statutory requirements for custodial stability.

356. **Harm to Plaintiff**:

a. Plaintiff experienced severe emotional distress upon learning of the concealed residential insecurity, as it directly harmed his children and demonstrated Defendants' ongoing bad faith.

b. Defendants' fraud deprived Plaintiff of the opportunity to challenge relocation on factual and legal grounds, compounding the emotional harm caused by the unjust loss of contact with his children.

357. **Impact on the Children**:

a. The children were directly harmed by the instability resulting from Defendants' misconduct, further exacerbating the alienation of Plaintiff from his children.

358. **Defendants' Extreme and Outrageous Conduct**

a. Defendants' actions were not only fraudulent but extreme and outrageous, as they knowingly exploited the Indiana trial court's reliance on their misrepresentations to further alienate Plaintiff from his children.

b. Their conduct demonstrated reckless disregard for the harm caused to both Plaintiff and the children, including emotional harm, instability, and deprivation of Plaintiff's parental rights.

**Relief Requested**

359. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award:

    a. **Declaratory Relief** affirming that Defendants' concealment and misrepresentation constituted fraud and caused harm to Plaintiff and his children;

    b. **Compensatory Damages** for the emotional distress caused by Defendants' fraud and concealment;

    c. **Punitive Damages** to deter Defendants from engaging in similar misconduct in the future;

    d. **Injunctive Relief** requiring Defendants to disclose all relevant information to any future court proceedings;

    e. **Reasonable Attorney's Fees** and Costs under applicable statutes; and

    f. Such other and **further relief** as this Court deems just and proper.

## Count 20: Unconstitutionality of Indiana Trial Rule 52(A) and its Enforcement Under Color of State Law

**Incorporation of Other Allegations**

360. Plaintiff Myma realleges and incorporates by reference all preceding and following paragraphs as though fully set forth herein.

136

1    **Legal Framework for Challenging the Constitutionality of Indiana Trial Rule 52(A) and**

2    **Seeking Damages Under 42 U.S.C. § 1983**

3         361.    Grounds for Challenge: To establish the unconstitutionality of Indiana

4              Trial Rule 52(A), Plaintiff demonstrates:

5              a.   **Violation of Fundamental Rights**: The rule infringes on Plaintiff's

6                   fundamental rights under the Fifth and Fourteenth Amendments,

7                   including due process and equal protection.

8              b.   **Procedural Hurdles to Constitutional Protections**: It improperly

9                   conditions constitutional guarantees on procedural compliance,

10                  effectively waiving those rights for technical omissions.

11             c.   **Substantial Interference**: It interferes with litigants' ability to secure

12                  fair trial outcomes and meaningful appellate review.

13             d.   **Arbitrariness and Lack of Rational Basis**: The rule lacks a rational

14                  basis, serves no legitimate governmental interest, and is arbitrarily

15                  applied.

16             e.   **Harm**: Plaintiff suffered specific and direct harm due to the rule,

17                  including denial of meaningful judicial review and vague,

18                  unsupported court orders.

19        362.    Plaintiff does not merely seek an abstract constitutional challenge to

20             Indiana Trial Rule 52(A). Rather, Plaintiff asserts that Indiana's application of

137

1     this rule, enforced under color of state law, has directly and proximately

2     caused a deprivation of his federally protected rights. As such, Indiana Trial

3     Rule 52(A) is not only unconstitutional but has also facilitated systemic due

4     process violations for which Plaintiff is entitled to compensatory and

5     punitive damages under 42 U.S.C. § 1983.

6  **Facts Satisfying the Elements**

7     363.    Defendants' Misuse of Rule 52(A) and Deprivation of Due Process:

8          a.   Defendant Wroe exploited the procedural deficiencies inherent in

9               Indiana Trial Rule 52(A) to deprive Plaintiff of his constitutional

10              rights.

11         b.   Despite Plaintiff's explicit request for findings of fact and conclusions

12              of law under Rule 52(A), the trial court issued an order that was

13              vague, unsupported, and unreviewable, providing only two findings

14              of fact while adopting Defendant Wroe's proposed conclusions

15              verbatim.

16         c.   This failure denied Plaintiff meaningful judicial review and enabled

17              Defendant Wroe to perpetuate her denial of Plaintiff's visitation and

18              communication with his children.

19         d.   Defendant Lorick, in concert with Wroe, engaged in conduct that

20              actively suppressed Plaintiff's ability to receive a meaningful judicial

138

1       determination by ensuring that key findings of fact and conclusions

2       of law were omitted from trial court rulings.

3       e.   The coordinated misuse of Indiana Trial Rule 52(A) demonstrates

4       concerted action among Defendants Wroe and Lorick, making them

5       jointly and severally liable under 42 U.S.C. § 1983 for their role in

6       denying Plaintiff's constitutional rights.

7       **Arbitrary and Capricious Application of Rule 52(A) by Indiana Courts:**

8       364.   Indiana Trial Rule 52(A) creates arbitrary outcomes by conditioning due

9       process rights on procedural requests, while courts routinely fail to comply

10       with the rule even when litigants meet its requirements.

11       365.   The appellate courts compounded this arbitrary application by

12       dismissing Plaintiff's appeal, citing vague and unsupported standards like

13       "prolixity" instead of addressing the substantive due process violations

14       raised in Plaintiff's case.

15       366.   These actions demonstrate a systemic disregard for the indivisibility of

16       due process and the equal protection guaranteed by the Fourteenth

17       Amendment.

18       **Harm to Plaintiff**

19       367.   Plaintiff has suffered direct harm due to Indiana Trial Rule 52(A),

20       including:

a. Denial of meaningful judicial review of trial court decisions due to vague and unsupported orders.

b. Emotional and financial harm from prolonged litigation without due process protections.

c. Chilling effects on Plaintiff's ability to seek redress through the judicial system, fearing further arbitrary dismissal.

d. Irreparable damage to Plaintiff's parental rights due to unreviewable court orders based on unsupported conclusions.

**Legal Argument: The Indivisibility of Due Process**

368.    Due process cannot be divided, allocated, or waived. It is an inherent right that applies equally to all individuals without procedural barriers.

369.    By conditioning due process on compliance with procedural rules like Indiana Trial Rule 52(A), the state courts have effectively undermined this fundamental constitutional guarantee.

370.    The resulting harm to Plaintiff exemplifies the broader systemic issue: Defendants and the courts collaborated to deprive Plaintiff of equal protection under the law by selectively applying due process based on discretionary criteria.

371.    This case does not seek to re-litigate the underlying family law issues or challenge the determinations of the state courts. Instead, it addresses the

1    unconstitutional manner in which those determinations were obtained and

2    the severe consequences that flowed from them.

3    **Relief Requested**

4    372.    WHEREFORE, Plaintiff respectfully requests that this Court enter

5    judgment in his favor and against Defendants, jointly and severally, and

6    award the following relief:

7    a.  **Declaratory Relief**:

8    i.  Declaring that Indiana Trial Rule 52(A) is unconstitutional

9    under the Fifth and Fourteenth Amendments for

10    conditioning fundamental constitutional protections on

11    procedural compliance and resulting in unreviewable and

12    vague court orders.

13    ii.  Declaring that all court orders issued without findings of fact

14    and conclusions of law with or without the request under

15    Indiana Trial Rule 52(A) are unconstitutionally vague and

16    unenforceable.

17    iii.  Declaring that any effort by the state of Indiana or any other

18    state to justify their deprivation of the US Constitution be

19    deemed an attack on the United States to be addressed by

20    the Executive and Attorney General of the United States.

iv.   A declaration requiring Indiana appellate courts to review

appeals on the merits, regardless of subjective and

undefined standards such as "prolixity."

b.   **Injunctive Relief** prohibiting Indiana courts from enforcing Rule

52(A) in a manner that deprives litigants of their due process rights.

c.   **Compensatory Damages** for harm caused to Plaintiff by the

enforcement of Rule 52(A), including denial of due process and

meaningful judicial review.

d.   **Punitive Damages** against Defendants to deter similar violations of

constitutional rights in the future.

e.   **Reasonable Attorney's Fees and Costs** under 42 U.S.C. § 1988.

f.   Such other and **further relief** as this Court deems just and proper.

## Count 21: Excessive Fines and Judicial Retaliation (Eighth and Fourteenth Amendments, Austin v. United States, 509 U.S. 602 (1993))

**Incorporation of Other Allegations**

373.   Plaintiff Myma realleges and incorporates by reference all preceding and

following paragraphs as though fully set forth herein.

**Legal Framework for Eighth Amendment Violation**

374.   To establish a claim under the **Excessive Fines Clause of the Eighth**

**Amendment**, Plaintiff demonstrates:

142

a. **Punishment** – The sanction imposed serves as a punishment rather than a remedial measure.

b. **Excessiveness** – The penalty is grossly disproportionate to the alleged infraction or its stated purpose.

c. **Intent to Punish** – The sanction was imposed to retaliate against Plaintiff for exercising constitutional rights.

d. **Harm** – Plaintiff has suffered significant financial, emotional, and reputational harm as a direct result.

**Facts Satisfying the Elements**

375. **Punitive Assignment of Attorney Fees**: Defendants have moved a compliant Indiana Trial court for attorney's fees despite conceding every element for Plaintiff's case for relief, failing to present a substantive defense and never citing a single legal theory of Plaintiff that was frivolous, simply averring the conclusory allegation "too many to mention. "

a. Despite prevailing on overwhelming evidence and admissions that Defendant Wroe had violated court-ordered visitation in every regard, Plaintiff was arbitrarily ordered to pay $8,000 in attorney fees to Defendant Wroe.

143

b. The imposition of attorney fees was punitive in nature and unrelated to any misconduct by Plaintiff. Instead, it appeared designed to retaliate against Plaintiff for seeking judicial relief.

c. By chilling Plaintiff's access to the courts, Plaintiff would be further punished in the knowledge that Defendants would have free reign to alienate and abuse the children with impunity.

376. **Punishment Through Excessive Fines**

a. **The financial penalty exceeds Plaintiff's ability to pay**, effectively preventing him from pursuing future litigation:

   i. The attorney fee award was grossly excessive and disproportionate to Plaintiff's financial circumstances, as evidenced by his fixed income, documented inability to pay, travel costs to visit his children, and established child support obligations.

   ii. The attorney fee award was grossly excessive and disproportionate also for Defendants' ability to pay and have one or more legal counsel present, and for having a stated income more than ten times Plaintiff's.

   iii. The financial penalty far exceeded any reasonable sanction and served no legitimate purpose beyond inflicting further undue hardship on Plaintiff.

  b. This creates a **functional barrier to justice, violating the Eighth and Fourteenth Amendments**.

377. The **exclusion of Plaintiff from the North Carolina trial** on August 2024, further demonstrates punitive intent:

  a. Plaintiff was **denied the opportunity to participate** in a hearing concerning his fundamental liberty interest—the right to maintain a relationship with his children.

  b. Plaintiff was **not allowed to even monitor** the proceedings.

  c. **Procedural barriers were arbitrarily applied** to deprive Plaintiff of his ability to present objections, reinforcing a pattern of judicial retaliation.

  d. **The use of procedural technicalities to bar access to justice** is further evidence of unconstitutional retaliation.

  e. Defendants also inequitably seek to establish jurisdiction in North Carolina by attempting to serve Plaintiff in Illinois[2].

---

[2] *Pennoyer v. Neff*, 95 U.S. 714, 732 (1878)): '…no tribunal established by it can extend its process beyond that territory so as to subject either persons or property to its decisions. "Any

**Excessiveness and Disproportionality**

378.   Under Austin v. United States**, a financial penalty is unconstitutional if it is punitive rather than remedial**. The $8,000 attorney fee sanction meets this test because:

    a.  It was **not compensatory but designed to punish Plaintiff for exercising his rights** in court.

    b.  It **exceeds reasonable sanctions** typically imposed in family court matters.

    c.  It was applied **without findings of fact**, violating fundamental due process protections.

    d.  It serves no legitimate remedial purpose, **acting only to chill future legal actions by Plaintiff**.

    e.  The threat of contempt and indefinite imprisonment for nonpayment further underscores the punitive intent of the fee order. Defendants are relentlessly pursuing this avenue.

    f.  The exclusion of Plaintiff from a North Carolina hearing concerning his fundamental liberty interest, combined with the court's focus on

---

exertion of authority of this sort beyond this limit," says Story, "is a mere nullity, and incapable of binding such persons or property in any other tribunals." Story, Confl. Laws, sect. 539.'

1       minor procedural deficiencies, **shocks the conscience** and

2       represents a gross abuse of judicial discretion.

**Harm to Plaintiff**

379.    Plaintiff has suffered **severe financial distress**, reputational harm, and emotional distress due to:

    a.   The financial burden imposed by the unjustified $8,000 attorney fee sanction.

    b.   The **denial of his ability to contest adverse rulings** and defend his parental rights.

    c.   The **increased alienation from his children** resulting from procedural exclusion in North Carolina proceedings.

**Relief Requested**

380.    WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award the following relief:

    a.   **Declaratory Relief** affirming that the trial court's imposition of attorney fees and exclusion from the North Carolina proceeding constitute cruel and unusual punishment under the Eighth and Fourteenth Amendments;

b. **Injunctive Relief** prohibiting enforcement of the attorney fee order and invalidating decisions made in the North Carolina proceeding due to Plaintiff's exclusion;

c. **Compensatory Damages** for financial losses, emotional distress, and damage to Plaintiff's parental relationship caused by these unconstitutional actions;

d. **Punitive Damages** to deter future violations of constitutional protections;

e. **Reasonable Attorney's Fees and Costs** under applicable statutes; and

f. Such other and **further relief** as this Court deems just and proper.

## IX. IMMEDIATE RELIEF REQUESTED

381.    Plaintiff respectfully urges this Court to issue **an immediate declaratory judgment and injunctive relief** to prevent ongoing violations of Plaintiff's fundamental due process rights and to protect the best interests of the minor children. The orders issued in Indiana and North Carolina were obtained in clear violation of procedural due process and must be enjoined from enforcement before further irreparable harm occurs.

382.    The state court proceedings have resulted in a de facto termination of Plaintiff's parental rights without a proper evidentiary hearing, without

findings of fact supporting the legal conclusions, and in a manner so procedurally deficient that any further enforcement constitutes a continuing constitutional violation. These deficiencies have been amplified by judicial bias, ex parte communications, and failure to comply with state and federal procedural safeguards, leaving Plaintiff with no adequate remedy at law.

383.    Every day these orders remain in effect, Plaintiff suffers the permanent loss of his parental rights, and the minor children experience ongoing emotional harm and unlawful interference with their relationship with their father. This constitutes **immediate and irreparable injury** that cannot be compensated through monetary relief. Federal courts have the duty to intervene when state courts issue orders that blatantly violate due process and cause ongoing constitutional harm.

384.    Given the emergency nature of this case, Plaintiff urges this Court to issue an immediate ruling **adopting and entering the Plaintiff's Proposed Declaratory Judgment and Preliminary Injunction**. These proposed orders outline the necessary findings and immediate corrective actions required to prevent continued injury and to ensure compliance with federal constitutional standards.

385.    Plaintiff respectfully requests that this Court issue Plaintiff's proposed orders forthwith and grant any further relief deemed just and necessary in

1     light of the gravity of the constitutional violations and the imminent harm at

2     stake.

3     386.    Given the serious nature of the alleged due process violations, including

4     potential criminal misconduct under RICO, 18 U.S.C. §§ 241, 242, 2511 and

5     1001, Plaintiff respectfully further requests that this Court, upon finding

6     sufficient prima facie evidence of such violations, **refer the matter to the**

7     **United States Attorney's Office** for appropriate investigation and

8     prosecution of any federal offenses uncovered in the course of these

9     proceedings.

10 **X. ADDITIONAL RELIEF REQUESTED**

11     387.    Plaintiff respectfully requests that **in lieu of extant improper court**

12     **orders that Plaintiff's July 2022 proposed findings of facts and conclusions**

13     **of law be adopted** until such time as a court with jurisdiction can hear the

14     best interests of the children.

15     388.    Plaintiff further requests any and all relief that this Court may deem

16     appropriate and just under the law, including but not limited to **any relief**

17     **that this court may construe in Plaintiff's favor based on the well-pleaded**

18     facts presented in this action.

## XI. JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury on all issues so triable to a jury

Executed on ____February 28____, 2025, in Chicago, IL.

Signature:

____/s/_____

Peter Myma, Plaintiff, Pro Se

1

**XII. VERIFICATION**

2

3   I, Peter Myma, Plaintiff in the above-entitled action, declare under penalty of

4   perjury under the laws of the United States of America that the foregoing

5   factual allegations are true and correct to the best of my knowledge,

6   information, and belief.

7   Executed on ____February 28____, 2025, in Chicago, IL.

8   Signature:

9

10

11   _____/s/_____

12   Peter Myma, Plaintiff, Pro Se

13

## XIII. CERTIFICATE OF SERVICE

I hereby certify that on __February 28__, 2025, I caused a true and correct copy of the foregoing document and all attachments to be served upon the following parties via United States Postal Service certified mail, postage prepaid, to:

**Defendant Wendy Anne Wroe**

104 Shumard Oak Lane

Apex, NC 27539

**Defendant Johnny Darrell Lorick**

104 Shumard Oak Lane

Apex, NC 27539

I further certify that I will file proof of service with the Court upon receipt of the return receipt (green card) confirming delivery and of any additional service.

Executed on ___February 27__, 2025.

Signature: ____/s/_____

**Peter Myma**

Pro Se Plaintiff

153

## XIV. PARTY ADDRESSES


**Peter Myma**

**Plaintiff**

7620 Niles Center Rd.

Skokie, IL 60077


(812) 416-1011

petermyma@gmail.com




**Wendy Anne Wroe, Johnny Darrell Lorick**

**Defendants**

104 Shumard Oak Lane

Apex, NC 27539


(812) 558-4176

indigo_wroe@yahoo.com