1

                    IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
                             EASTERN DIVISION

PETER NICHOLAS MYMA,                )  Case No. 25 CV 2154
                                    )
                  Plaintiff,        )
                                    )
        v.                          )
                                    )
WENDY ANN WROE and                  )
JOHNNY DARRELL LORICK,              )  Chicago, Illinois
                                    )  February 10, 2026
                  Defendants.       )  10:03 a.m.
                                    )

               TRANSCRIPT OF PROCEEDINGS - HEARING
             BEFORE THE HONORABLE APRIL M. PERRY

APPEARANCES:

For the Plaintiff:     MR. PETER NICHOLAS MYMA, Pro se
                       7620 Niles Center Road
                       Skokie, Illinois 60077


For the Defendant:     ANN O'CONNELL LAW, LTD.
                       BY:  MS. ANN MCGINNIS O'CONNELL
                       1911-B Rohlwing Road
                       Rolling Meadows, Illinois 60008



Court Reporter:        NOREEN E. RESENDEZ, CSR, RPR, CRR
                       Official Court Reporter
                       United States District Court
                       219 S. Dearborn Street, Suite 1725
                       Chicago, Illinois 60604
                       (312) 582-5267
                       Noreen_Resendez@ilnd.uscourts.gov



                       *    *    *    *    *

                PROCEEDINGS REPORTED BY STENOTYPE
      TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court:)

THE CLERK:  Calling case 25 CV 2154, Myma vs. Wroe.

MS. O'CONNELL:  Good morning, Your Honor.  My name is Ann McGinnis O'Connell.  I represent the defendants, Ms. Wendy Wroe and Johnny Lorick in this matter.  This matter is 25 CV 02154.

MR. MYMA:  Good morning, Your Honor.  Myma plaintiff.

THE COURT:  Good morning, everyone.  We are up today on an oral ruling on the motion to dismiss, and the reason I'm doing this orally is because, A, I do plan to dismiss the complaint in its entirety; B, I think that some of the issues will benefit from discussion and some thought because most of these will be dismissed without prejudice, meaning that you will be allowed to try again.

So let me start, first of all, with the types of relief that you have requested, sir.  To the extent you are asking for a return of custody of your children, I will not be able to grant that.  That is not a proper form of relief to request from this particular court.  And you have asked for it in several different places in the complaint, including on page 85, where you request as injunctive relief immediate return of the children to your custody.

So the defendant raised here the domestic relations exception to federal jurisdiction, which does cover, as you know, a narrow range of issues including divorce, alimony, and

child custody.  And that's the *Ankenbrandt vs. Richards* case out of the Supreme Court in 1992.

So defendants are not correct that that bars your entire case.  They have argued that all of your claims are out because of that particular domestic relations exception.  That isn't quite right.  It does not bar all causes of action that arise in a domestic setting.  But you're also not right that it doesn't bar anything.  So to the extent you were pursuing restoration of custody in this particular matter, that will not be allowed going forward.

Similarly, to the extent you have asked this Court in the complaint to overturn or enter an injunction against or prohibit execution of or enter a declaratory judgment against state court orders, Rooker Feldman bars those claims.  So to the extent that you have brought a case here after having lost in state court, that you are complaining of injuries caused by those state court judgments, that you -- those state court judgments were entered before this district court proceedings commenced -- and we'll talk about that in a moment, because not all of them have been -- and that you are inviting district court review and rejection of those decisions, those are squarely within the realm of Rooker Feldman.

And Rooker Feldman applies even if you think the state court judgment was corrupt and the actors in the state court were corrupt.  That's the *Gilbank vs. Wood City Department of*

*Human Services* case out of the Seventh Circuit in 2024. So several of the claims in the complaint are barred in their entirety by Rooker Feldman. That includes Count 10, Count 11, Count 12, and I will issue this part in a minute order.

MS. O'CONNELL: Okay.

THE COURT: Count 15, Count 17, Count 18, and Count 21. I'll speak individually about each of those in a moment. But a high-level summary is that Counts 10, 11, 12, 15, 17, 18, and 21 will be dismissed with prejudice. That means you will not be allowed to replead those particular counts.

So, for example, Count 10 is a declaratory judgment request where you have alleged that all Indiana court orders, particularly those of August 9th, 2022, and April 30th, 2019, lack findings of factual support and that they are unconstitutionally vague and unenforceable. That is an injury that clearly flows from the state court order. So Rooker Feldman would bar that entire claim. And the relevant case here is *Jakupovic*, J-A-K-U-P-O-V-I-C, *vs. Curran*, C-U-R-R-A-N, 850 F.3d. 898, Seventh Circuit 2017, which has held that claims that directly seek to set aside a state court judgment are de facto appeals that are barred without further analysis.

Same thing with Count 11. That is one where you're also seeking a declaratory judgment complaining both about an attorney fee award that was entered against you as well as the

defendant's enforcement of that award in the North Carolina court where there is some ongoing litigation.

You've also asked that the North Carolina custody order be declared unconstitutional because it was heard without you being present. So in both of those claims, you are seeking a declaration that the North Carolina custody award, the Indiana fee award, and the North Carolina court enforcement are unconstitutional. Those are things that directly attack the state court orders and are barred by Rooker Feldman.

Now, I noticed when the defendant submitted all the state court orders, there is at least something still going on in the state court in North Carolina. It looks like there's still an open case regarding your custody. Now that, of course, you can still challenge in the North Carolina court because it's not completed. That's not barred by Rooker Feldman, but it would be barred by Younger abstention.

MS. O'CONNELL: Your Honor, can I add to that?

THE COURT: Sure.

MS. O'CONNELL: My understanding is that's not correct. Everything in North Carolina has been decided as of the 24th except for his attorney's fees that were awarded to her in Indiana for frivolous filings, and that's an $8,000 judgment that they've been trying to collect but they can't get service on him. So that's the only thing that's pending. The last court order was in 2024 and that's Number 15 in my filing.

THE COURT: Number 15 is, I think, phrased as a temporary custody order. It contains within it elements by which the plaintiff in this case can challenge it and have it reopened, which indicates to me that that court has maintained just jurisdiction.

MS. O'CONNELL: I absolutely agree with that. In any custody matter, in whatever state we sit in, it's always open for modification, always, on a change of circumstances, substantial change of circumstances. So to say that it's off call is correct. To say that no one can ever go back in and try to modify, is wrong. You can always go in and modify a state court judgment for custody, child support, maintenance. Things that you would see as a substantial change of circumstances, which we can't predict when an order is entered.

THE COURT: Well, for my purposes it is either Rooker Feldman or it's Younger, depending on whether or not the matter is still open; but one or the other, it's going to be barred on the federal court hearing the case.

Same thing goes with respect to Count 12 where you asked for injunctive relief under the All Writs Act. Those allegations mirrored those included in Claims 10, 11. Rooker Feldman bars that claim. With respect to Count 15, that's brought under 22 U.S.C. 1983 but the allegations in that you're seeking a declaration affirming your constitutional rights declaring that the enforcement of vague and unsupported court

orders violates federal constitutional standards and that the defendants acted under color of state law. You're seeking an injunction prohibiting the enforcement of those orders. That is also barred by Rooker Feldman because you are directly seeking to undercut those state orders.

MR. MYMA: May I interact briefly?

THE COURT: You may.

MR. MYMA: The minute entry that set this hearing, did not relate specifically to the Section 1983 claims and the injunctive relief, so I'm not really totally prepared for this.

THE COURT: You don't have to be prepared for anything. This is an oral ruling, not a hearing. So you just need to listen and take this into account for if and when you try to replead.

MR. MYMA: Okay. Number 2, as a pro se litigant, I only need to properly plead the facts. And the fact that some of my requests for relief go beside the mark, that does not in any way interfere with any relief that the Court can construe on my behalf or other forms of relief that I have. So the relief does not deny the facts that are in there and what can flow from those facts. I do agree with the Court that if I'm trying -- if the Court construes that what I'm doing is to change or do a super appeal to the state court, then, you know, abstention is warranted. I do not dispute that.

THE COURT: Okay. Well, I'm going through count by

count. You've got 21 counts here, so we'll talk about each of them. I'm starting with the ones that you are not going to be entitled to replead. So we're going to move on to Count 17, which involved improper transfer of jurisdiction and due process violations. That is largely duplicative of the allegations in Counts 10, 12, and 15 with a strong focus on the Indiana transfer of jurisdiction order. Those counts -- that count seeks declaration that the transfer is improper and an injunction declaring void all orders by the North Carolina court. Rooker Feldman applies for the same reasons already discussed.

Count 18 is largely duplicative of the allegations in Counts 10, 12, and 15. Focusing on the Indiana trial court rulings that excused the defendant's violations, according to the complaint, of visitation orders and selective enforcement of visitation orders. It alleges collusion between the defendant and the state courts.

You've sought in that count a declaration affirming that the defendants violated your rights and that enforcement of the state court orders violates federal law. Those claims are barred by Rooker Feldman. Moving on to Count 21. That's excessive fines in violation of the 8th and 14th Amendment. That alleges that the Indiana trial court's $8,000 attorney fee award was arbitrary and violates your rights. You've sought a declaration voiding all of the North Carolina custody related

orders and affirming the trial court's -- I'm sorry -- and trying to undo the trial court's imposition of attorney's fees. Again, Rooker Feldman bars that claim.

So that does it for Counts 10, 11, 12, 15, 17, 18, and 21. Those are the counts where you have directly attacked in the claim, the claim itself, is in essence an attack on an underlying state court judgment.

MR. MYMA: May I speak to that? I'm not attacking the substance of the judgment but by the way it was arrived. If the judgment is arrived without due process, then it is a Section 1983. It is a federal matter.

THE COURT: But to the extent that what you are asking for as relief is that we make that state court order go away, the claim is barred by Rooker Feldman.

MR. MYMA: Right. I agree with you, Your Honor, if that's what I'm asking for. But still if there's a Section 1983 claim for which there's also damages due, the fact that they did not give the due process or the process due, they didn't write a proper court order, they held hearings in secret, that is still actionable under Section 1983, irrespective of the amateurish relief that I requested.

THE COURT: You can attempt to replead with that very narrow theory and they will, I'm sure, respond.

MR. MYMA: So that it won't be dismissed with prejudice, it gives me one chance at least to refile under that

theory that you just outlined?

THE COURT: Well, look, to the extent Count 10 was for declaratory judgment, that's not seeking damages. That's dismissed with prejudice. Count 11 was a claim for declaratory judgment. That's dismissed with prejudice. It's not asking for damages. Count 12 was asking for injunctive relief, that also is not seeking damages. So I understand your thought on the Section 1983. If you think that you can try to replead those, you will be allowed to. The excessive fines, I don't know what you would be seeking for other than the return of your money that they fined you for.

MS. O'CONNELL: He never paid.

THE COURT: Okay. So I don't know what excessive fine you would be complaining about, what your damages would be in a case that you didn't pay.

MR. MYMA: If it was assessed -- again, if what they said is you file frivolously, but they never identified what was frivolously filed. I can't appeal that because there's nothing that you can go after. I can't appear in the state court or even here.

THE COURT: The state court -- you can never appeal here a state court order.

MR. MYMA: Right. But if they didn't give me the due process of a proper court order, that gives you enough substance for the decision that you can address that, then

that's a Section 1983. If they gave you the process that you're due and they gave you a bad decision or a wrongly thought through decision, that's something in the province of an appeal and I wouldn't bring that here.

If they didn't give me the ability to appeal it by stating the reasons for their judgment, if they withdraw whatever facts or didn't even demonstrate facts that supported their conclusions, then there's no appeal possible and then it becomes a civil rights issue as opposed to --

THE COURT: No. There is an appeal possible. You could have appealed.

MR. MYMA: And I did.

THE COURT: And you did and you lost.

MR. MYMA: Well, no. I tried to have it identified. So if they say you filed frivolously and we're going to assess against you $8,000, they originally wanted $43,000; and I asked for identification of the court order, so I can say this was either frivolous and I have to agree with it or it's not. But if they don't give you the basis for it, if they say --

THE COURT: Who is they?

MR. MYMA: The judge. The trial judge who assessed the $8,000 refused. And I went all the way to the Indiana Supreme Court and asked them could I please have a proper court order that I can appeal because I need the basis for their decision. You know, a court order is like a law --

THE COURT: Pause on this for a moment. Your issue then is with the judge.

MR. MYMA: No, it's with the due process; not with the judge.

THE COURT: But who are you suing?

MR. MYMA: I'm getting relief because the defendants benefitted from --

THE COURT: No. You cannot do that. You cannot sue the defendants for due process that you believe was denied to you by the courts. If your concern is that the judge did something to you or that the court system as a whole did something to you, then you can try to bring a 1983 action. It would be, I think nearly impossible due to the immunities involved. But you can't seek something against these particular defendants because you were damaged by the court system. So the extent your beef is that the court order was not appealable or that the court of appeals did not appreciate your case fully and denied you due process, that I will not let you plead against these defendants.

MR. MYMA: There is one nuance there because the judge did not offer that on his own. The court order that was in question here was written by the defendants and the judge photocopied it into there, so they had -- they were the ones that drove the court to do that. Not only are they benefiting from it, but they're the ones that said, you know, this is all

frivolous; and the judge never gave a reason for it, but accepted it as it was. So they do have some agency there and their operating under --

THE COURT: You've submitted a bunch of proposed orders to me as well. That doesn't mean I'm not acting independently. Proposed orders submitted by the parties or their counsel are a traditional part of our court system.

MR. MYMA: Right. I understand it. It's a timesaving mechanism. But if the Court without having heard that in a hearing or if they accept that that's never even been heard during the trial and don't even given a basis for it, then the party who offered that court order and the judge signed without thinking or whatever else, then they do have some liability under -- they have color of state law, is what I'm saying. The judges are all immune. You can't get damages against judges ever. The judge is himself or herself immune but their actions are not. There's a big difference.

THE COURT: You would need to plead a conspiracy involving these defendants and the state court judge, and you would need to plead that plausibly and nonfrivolously to be able to proceed on that theory under Section 1983.

MR. MYMA: For example, we had a hearing set after a certain --

THE COURT: We don't need to get into the facts. I've told you what you would need to replead, and I told you would

need to do it plausibly and nonfrivolously. If you believe you can plead a conspiracy between nonstate actors, private actors, like the defendants in this case, and a specific judge --

MR. MYMA: Absolutely.

THE COURT: -- then you can attempt to replead the 1983 claim.

MR. MYMA: Fair enough.

THE COURT: Okay. Let's move on to some of the other counts. You have at least three claims here that are not actually torts, all right. So Count 6, you've alleged a claim for tortuous interference with parental rights and custody. That is not a tort under Illinois law. And that is *Hulsh vs. Hulsh*, 2025 West Law 1462937. That's an Illinois Supreme Court case from 2025 in which the Court noted that it had declined to judicially create a tort cause of action for interference with the parent/child relationship. It's been cited in the briefs. I know you are all well aware of it. It makes it very clear there is now and has never been a claim for tortious interference of parental rights under Illinois law. It's also not not a claim under Indiana law. And that's the *Cornell vs. Help at Home* case, 2021 West Law 1839578, which is out of the Northern District of Indiana in 2021. So Count 6 is also dismissed with prejudice.

Count 4 alleges a claim of civil conspiracy based upon the alienation and destruction of your society and

companionship between you and your children. You have cited North Carolina General Statute 52-13. That is a statute that relates to the alienation of affection within a marriage. There is no tort in North Carolina for the alienation of a patient from a child. And that was made clear in the *Morris vs. Bruney* case, which is 338, S.E.2d 561, North Carolina Court of Appeals 1986.

Neither Illinois nor Indiana recognize that particular tort either. Given that a conspiracy must involve an agreement to commit an unlawful act and this particular act was not unlawful, so the civil conspiracy claim fails and is dismissed with prejudice on the basis that there is alienation or destruction of the society and companionship between plaintiff and his children.

Count 13 alleges a habeas corpus claim. The problem is that the plaintiff is not and has never been, as far as I can tell, in custody.

MR. MYMA: We're talking Indiana law here, not federal law. Indiana law specifically has habeas corpus in which you can bring the conditions of the child's location or, you know, the interference with my being able to see the children. That is an actual --

THE COURT: If it's in Indiana, then you would have to bring that in an Indiana court. That can't be brought here. To the extent -- it doesn't matter that you have diversity

jurisdiction here.

MR. MYMA: All right.

THE COURT: So the *Lehman vs. Lycoming County* case, a Supreme Court case from 1982, 458 U.S. 502, although the federal habeas corpus statute has existed since 1867, federal habeas has never been available to challenge parental rights or child custody. To the extent that you have alleged violations of various custody orders, as we already discussed, that's something over which the state court retains exclusive jurisdiction including in a habeas case.

And then to the extent that particular count also sought relief restoring jurisdiction to the Indiana courts, returning the children to the plaintiff, those would be barred by Rooker Feldman and/or the domestic relations exception. So Count 13 is also going to be dismissed with prejudice.

Let's move on to the counts that you are going to be allowed to replead. First of all, we have certain claims that must be pled with specificity, meaning you have to give particular facts for those, more than is required under Rule 8 of the Federal Rules of Civil Procedure. Counts 5 and 19 both raise claims of fraud. Under Federal Rule of Civil Procedure 9(B), fraud has to be pled with particularity. That means the who, what, when, where, and how is the fraud. You have to have particular misrepresentations alleged. And one thing I want you to keep in mind when you are thinking about repleading

this, for fraud, you have to have a plausible allegation that the defendants intended you, the plaintiff, to rely on the misrepresentations or to deceive you, the plaintiff. So to the extent that you have a lot in these fraud claims that center around deception of the courts, that is not a viable fraud claim. You have to plead they were trying to fool you. And you have to do it with particularity for which misrepresentation, which deception, when did it occur, where did it occur, and who did it.

Statements of opinion are not fraud. So to the extent that they are saying things like, you are a bad parent or that you don't have any connection to your children in any significant way, those are not factual statements. Those are statements of opinion that cannot support a fraud action. Statements in court cannot support a fraud action or an independent tort for damages.

According to the Illinois Appellate Court in the *Parks vs. Neuf*, N-E-U-F, opinion, there is no independent tort for damages and action for damages caused by perjury may not be maintained under Illinois law. Additionally, both Illinois and Indiana have absolute immunity for statements that are made by private parties during causes of action. So to the extent your fraud claims relied on statements made in court by the defendants who are parties to those actions, they will have absolute immunity for them, and to the extent that they relied

on opinions that were being given to the children, you aren't going to be able to maintain a fraud claim based on that. But I will allow you to try to replead the fraud claims if you can come up with statements made not in court, with particularity so who would have said it, when was it said, and where was it said for factual statements that you believe defamed you -- I'm sorry -- that you believe constituted fraud. Defamation is next.

Defamation also needs to be alleged with enough particularity for the defendants to be able to respond. At this point the complaint does not allege which defendant made any statement, what the statement was, when it was made, or who it was made to. Defamation has a heightened pleading standard under Illinois law. That's the *Green vs. Rogers* case in which a motion to dismiss was affirmed when there was no specific statements alleged. Just like fraud, defamation does not include statements of opinion. To the extent you have currently alleged that you were called a bad caregiver, not a legitimate parent, those are statements of opinion. Again, it cannot include statements in court by any particular party.

You also have attempted in this particular claim to allege damages based upon statements that appear in the Court's opinions, including the Court's opinion that you engaged in frivolous conduct during litigation and were trying to obtain unfair advantage based upon harassment in those proceedings.

Statements the Court made can't support an action for defamation.

So at this point, Count 3 is dismissed without prejudice. To the extent you can replead consistent with those guidelines, you will be allowed to do so.

Counts 8 and 9, those are the wiretapping and eavesdropping counts. First of all, let me start with the defendant's arguments on this. Your only specific argument in response to this case is that parents have a right to monitor their children's communications.

MS. O'CONNELL: I did not have the order that was entered that terminated his parenting phone calls due to obsessive phone calls to the children that were harassing in nature. I did not work on this case, and when I finally got that order, I realized it was after I had pled everything. But the actual court order, I believe, that you've already mentioned it, was the one in North Carolina, which has terminated his parenting phone calls. That's --

THE COURT: Okay. That seems to me neither here nor there for a wiretapping and eavesdropping count. Parents don't have the right to record phone calls of their children, at least under Illinois law or under federal law as far as I know. If you think that that's a defense, then you would need to cite cases that would indicate that. I've looked at both statutes, neither one has a parental consent exception except I think in

Illinois for social media accounts, parents have a right to monitor those. Parents don't have a right to record their children's phone calls. That said, at this point I have no idea what call was recorded, who it involved, who heard it.

MR. MYMA: We have this already as part of their filings in North Carolina in which they cite specific things I was to have told the children.

THE COURT: That's not the same as a recording.

MR. MYMA: It is monitoring and for the purpose of intimidating the children.

THE COURT: Monitoring is not the same as eavesdropping or wiretapping.

MR. MYMA: All right. Now, I have to explain it the way the courts in Indiana works, the domestic relations courts, is that the Supreme Court of Indiana has created something called a parenting time guidelines and this is they state is presumptively applicable in every case.

THE COURT: I remember.

MR. MYMA: You'll see there's a nugget of wisdom in here somewhere. So what they do is they make the life of a, you know, state, county judge very easy by saying this is the standard procedure under which you are going to create the court order and you can deviate from that for the specific instance or facts or circumstances of the case.

Now, the presumption always is that the parents are

always entitled to private phone calls and they specifically call out that monitoring, surveilling these calls, is very harmful to the children. So that's the basis for the wiretap.

THE COURT: It can't be. You can't have some random Indiana guideline as a basis for your action.

MR. MYMA: This is by the Supreme Court.

THE COURT: If you're going to replead, you need to plead a violation -- and we've got some choice of laws here that everybody needs to think through. You need to plead a violation under the law, all right. So there is a federal Wiretapping Act. There is an Illinois Eavesdropping Act, but you would need to plead with specificity what call, when, who was involved in that recording. And I want to make clear, monitoring is not the same. As far as I know, monitoring is not a legal violation, okay. So to the extent that you have an interception, which has a very specific definition under the federal law, the interception is the acquisition of contents of a communication through a device. And the phone itself is not the device. There has to be some separate device. So if they recorded the conversation, for example, with any type of recording device, you would have a viable claim. If they were in the same room with the children when the conversation was happening, if they asked the children to put the call on speaker phone, if they interrogated the children afterwards about the call, that's not eavesdropping or wiretapping under

the law.

So you have to have a good-faith factual belief that they recorded you or violated the law, either the federal wiretapping law or the Illinois eavesdropping law or if you think some other choice of law applies here and there's an Indiana law or a North Carolina law, then you would be able to allege those.

But you have to allege at least one particular interception with particularity so that they can respond. It is not plausible at this point to say that at some point in the last 9 years one or other of the defendants recorded or monitored some unknown conversation. And the speakerphone case, by the way is *People vs. Armbrust*, 956 N.E.2d 580. That's an Illinois appellate court case in 2013, which explicitly held that listening to a conversation via speakerphone does not constitute a violation of the Illinois Eavesdropping Act. So Counts 8 and 9 are dismissed without prejudice.

All of those, 5 and 19, 3, 8 and 9, those are all counts that need to be -- can be replead and need to be replead with specificity.

MR. MYMA: Can you repeat that again?

THE COURT: Sure. I'll issue a minute order. I'm just giving the buckets of which counts fall into which category.

All right. Moving on to Counts 1 and 2, intentional infliction of emotional distress and negligent intentional of emotional distress. To the extent you are complaining about distress or actions that occurred in the state court proceedings, there are three problems with that. First, we already talked about how a private litigant enjoys an absolute privilege for statements made during the course of and as part of a judicial proceeding. The case for that is *Thompson vs. Frank*, 730 N.E.2d 143, Illinois Appellate Court 2000. So to the extent that they were emotionally disturbing you because of the court proceedings in the court proceedings, that isn't going to fly. To the extent you have judicial complicity as a key part of your IIED and NIED claims, the Court's failure to enforce their visitation orders or to issue proper findings of fact, those are not something -- those are not things that the defendants did to you, okay. So you are not going to be able to maintain an emotional distress claim based upon choices made by the judges for the courts.

And then, of course, I would expect to see that if these issues have already been resolved, so you have already pled, for example, that you sought judicial relief at every stage yet your claims were dismissed, ignored, or inadequately addressed, we already talked about how you can't relitigate in federal court things that are already litigated in the state court, okay. So to the extent you try to replead those two

claims, keep them clean, keep them focussed on what the defendants did to you outside of the court process.

MR. MYMA: Your Honor, I don't know if we're misreading the same claim. It's really very simple. I have -- and Rooker Feldman does not apply because I am actually in favor of the court orders, the court orders, as they've pled it as a defense, the court orders gave me visitation and they denied it. And that's for a former stay-at-home caregiver, the 10 years of deprivation meets the standard for the extremity of the distress, being separated by your children, by parties who deliberately violated every single court order and admitted to it in a proposed order that was issued in 2022.

So there should be little doubt that that has the gravity and the causation to go forward because there's nobody else responsible for facilitating visitation except the defendants and they chose not to. That's in direct violation of the court order, so Rooker Feldman can't have this Court abstain from that. It's is a very basic, simple tort that every parent can understand.

MS. O'CONNELL: Your Honor, this has been going on for at least 10 years now and there has been in almost every court appearance this has been talked about, frivolous motions. I understand where the Court is going with all of this stuff, but his arguments fail. And if that's what he's going to come back with, then where we're at the point where this is frivolous.

He had every opportunity in the world to see these children pursuant to court orders in Indiana and he failed to follow court orders. How that can be intentional, emotional distress on my clients, I don't know.

THE COURT: You need to brief that then.

MS. O'CONNELL: What's that?

THE COURT: You didn't brief it. All right. And we're going to talk about that in a minute. I'm letting him replead; but when he repleads, I expect to see you briefing each and every claim explaining why under the law he hasn't --

MS. O'CONNELL: It's hard for me to understand it to be honest with you. It's such a jumbled up mess.

THE COURT: It is your job. I've done it here for you. I have 18 pages worth of oral ruling I'm issuing based upon it. You're going to have to do the same thing next time around. If I didn't have the independent obligation to review complaints for frivolousness, then I wouldn't have done it this time around. So next time around, I expect to see case law on IIED and negligent intention of emotional distress and why under the law refusing to let him see his children does not constitute a separate tort. Because his point isn't that the courts have not weighed in on this or that he didn't have a right to. His point is that it's a separate tort. And so under the standards, you're going to have to explain to me why that isn't extreme or outrageous or you can raise collateral

estoppel if you think that this has already been definitively decided below. But those are your defenses that you have to raise.

MR. MYMA: Your Honor, first off, her judging my case as frivolous is not really relevant and usurps your prerogative. Secondly, based on what she said to you today, she said that I had tried too extensively to reach my children and yet the court order, which she also offered, said that I got three phone calls in six years. So you can't square that circle. That's very, very clear in my estimation. You should let that claim go through.

THE COURT: I understand that's your estimation. At this point I don't think you've adequately pled it and here is why. Right now the statements are highly conclusory. You say things like defendants fostered hatred and disrespect toward you by your children. That doesn't tell me enough to plausibly state a claim that they did something extreme and outrageous. All right. Divorce cases, custody cases, everyone is trying to foster hatred and disrespect towards each other. So if you can find a case that says that qualifies, then we can talk. But at this point, the cases I found have said that insults don't constitute intentional infliction.

MR. MYMA: Right.

THE COURT: I found cases that say that parents have significant discretion in upbringing their children even when

their conduct may arguably undesirable or otherwise emotionally detrimental, the law is reluctant to interfere with such parental conduct by means of claims for intentional infliction of emotional distress, unless the conduct is actionable under the general standards governing recovery.

I have not found a single case and as of 2014 the Illinois Appellate Court had not either, where the prevention of the establishment of a parent/child bond can be considered outrageous conduct for the purpose of supporting an IIED claim. The case that cited that was *Orym vs. Lucht*, L-U-C-H-T, 214 West Law 890012.

MR. MYMA: I believe, Your Honor, I argued why that wasn't applicable earlier. I do not have the razor sharp mind to recall the specific reasons at this point, but the main portion of the claim is I was granted visitation in the court orders and they denied it. And they stated that I tried too hard to get it, and they still denied it. And that is -- that does -- 10 years without children that you raised probably meets that standard, despite the fact that there is no other -- the way you're saying it is because nobody has ever pursued this before, that it should never be pursued in the future.

THE COURT: No. What I'm saying is I'm quoting from the Illinois Appellate Court, which has explicitly stated that no case has ever found that keeping a parent from their children constitutes IIED. And I'm applying, I think, Illinois

law, although that is an open matter for discussion here, which means that you are trying to bring a claim that has never been recognized as a valid IIED claim. And when couple that with the fact that Illinois law has explicitly refused to acknowledge a tort for interference with the parent and child relationship, I think we are going to have a problem. I'm letting you replead it, and I'm asking you to do it very narrowly keeping out the things that I told you are not going to do the trick, specifically the insults, the statements that are made in court proceedings. You are going to have to plead things that they did to you outside of the court proceedings that constitute extreme and outrageous conduct, okay?

MR. MYMA: All right.

THE COURT: Count 7, intrusion upon seclusion. So intrusion upon seclusion requires something that's highly offensive, that the matter intruded upon was private and that it caused the plaintiff anguish and suffering. As best I can tell, your intrusion upon seclusion claim is based upon you making calls to your children in the defendant's house. Now, first problem, I have not found a single case where someone can be responsible for intruding on your seclusion where you are the ones calling them, but let's side that aside.

You have stated that it is based on the defendant's monitoring, recording, transcribing, and documenting your private phone calls with your children. First of all, I don't

know which child, which defendant, we have two of them, which conversation or what was shared. And the what was shared is important because you have to plead that it was a private matter and you can't do that in a conclusory fashion just saying it was a private matter. A private matter under the law is something that is facially embarrassing and highly offensive if disclosed, okay. I have kids. I'm not talking to them a lot about things that are facially embarrassing or highly offensive to me as disclosed. We're generally talking about their days, what they're up to, their sports events.

So you'll have to put a little more meat on the bones about why whatever it was that was shared constitutes something that is deeply personal. You said it's deeply personal. I don't know what that would be honestly. So that count needs to be replead with a little more focus, so that it can become plausible.

Moving on to Count 14 RICO. To state a RICO claim you have to allege conduct of an enterprise through a pattern of racketeering activity. At this point you have not alleged an enterprise. It appears to me that you are attempting to allege an enterprise that is compromised of the two defendants and the entire state court judicial systems in Illinois, Indiana, and North Carolina, not a specific judge, mind you, but the judicial system as a whole. That is not plausible on its face.

RICO is more than a group of people or entities who

decide to work together to commit racketeering. It must have goals separate from the predicate acts, there must be some type of organizational structure, and the defendants have to have participated in the direction or operation or management of the enterprise at least under federal law.

In this case, there's no plausible allegation at this point that these two litigants participated in the operation or management of the judicial system. Additionally, predicate acts under RICO have to be alleged with specificity. The means the time, the place, the content and to the extent you are relying on fraudulent communications, I do not know which ones you are talking about, when they took place, where they took place, who was involved. So those would have to be pled with specificity.

Indiana's RICO statute, I think you mentioned is modeled after the federal RICO statute. It does not have the management or direction of the enterprise element, but all of the others still apply. So Count 14, the RICO count is dismissed without prejudice. But you would need to be able to state not only the elements that you would need to plead with specificity what fraudulent acts or other underlying RICO predicates you are alleging.

Count 16 alleges abuse of process. As I understand this particular count, Defendant Wroe filed a motion in North Carolina to modify your visitation rights. When the true

intent was to compel your physical presence in North Carolina to serve you with a separate contempt action for failure to pay attorney's fees. However, you also alleged, in fact, the visitation of your children was cutoff based upon that proceeding. Based upon this, this isn't a plausible allegation of abuse of process.

Filing a lawsuit for an improper purpose does not alone constitute abuse of process under either Illinois or North Carolina law. Serving someone with a summons is not abuse of process. Abuse of process has to be some act in the use of process that is not proper in the regular course of proceedings or in other words the process must have been used to accomplish a result that is beyond the purview of that process. When the process is used only for its intended purpose, here serving you with process for the purpose of serving you with process, there has been no misapplication of that process. That's from *Neurosurgery & Spine Surgery vs. Goldman,* which is an Illinois Appellate Court case from 2003.

I will also add that the tort of abuse of process is disfavored under Illinois law and because of that, the elements are very strictly construed. At this point there's not a possibility of abuse of process based on the facts alleged.

Which takes us to Count 20, unconstitutionality of Indian Trial Rule 52(A). The allegations with respect to this particular count are entirely legal conclusions. I honestly

have no idea after looking at this when you were harmed by that particular rule, how you were harmed by the rule, or even what the rule is. If I Google the rule, there's nothing unconstitutional about it. It sounds like you were harmed by the rule because you had court orders entered against you, which would obviously pose a Rooker Feldman problem.

You asked for declaratory and injunctive relief against the rule being applied to you, but at the same token, the complaint makes very clear that there aren't any Indiana proceedings going on anymore, so to the extent that you have brought this action seeking declaratory injunctive relief against the trial rule of an Indian Court, I don't understand how that can ever apply when that case is pending only in North Carolina --

MR. MYMA: It's a little bit unusual. I think the Court understands how the federal rules were created to invite consistency across all the different circuits. They have 52 rule, I'm sure you're better familiar with it than I am, and it outlines what a proper court order is. So now Indiana took most of the trial rules from the federal system and then introduced some modifications including this 52(A). What it comes down to is, if you want the due process of an appealable order, you have to request it. And that -- I have standing because it was applied to me. So in the case of two judges, one Judge Worton that made a dissolution decree and another

judge that made a contempt and modification order.

In one case I did not ask for the specifics of the order and in the second case, Judge MacTavish did grant that that he would make special findings but didn't make the findings at all, and not enough to support a proper appeal.

The fact that you have to request the due process of something that puts you on proper notice is unconstitutional. It's very simple. They decided to deviate from every court order, at least in a very basic sense, and say these are the reasons -- these are the things we found at trial. These are the reasons we are going to construe the order in this way, and that's the court order. That's a normal court order, which I'm sure you understand much better than I do.

Indiana took that and said, no, you get something called a judgment of general jurisdiction if you don't ask for special findings. I asked for special findings; I was not given them because I know this is a way for the Indiana courts to circumvent the law that they are supposed to be enforcing.

THE COURT: But pause. For declaratory injunctive relief, which is the only thing you sought under this count, you have to show that you're at risk of it being applied to you now, imminent and substantial risk that you are about to be the victim of the unconstitutional Indiana Trial Rule 52(A).

MR. MYMA: All right. There I do plead ignorance because I am not a lawyer here. The facts as I've stated them

34

they introduce a mechanism by which millions of Hoosiers are denied due process.

THE COURT: But you're not a Hoosier, so to the extent you're trying to seek declaratory relief against a trial rule, you have to show that it's at danger of applying to you somehow; and at this moment, given that you're in Illinois and they're in North Carolina, I don't see any basis for you to bring a declaratory injunctive action trying to get me to declare an Indiana rule unconstitutional.

MR. MYMA: Because I've already been affected by it.

THE COURT: Well, that's the Rooker Feldman problem. If it has affected you because you got a bad court order out of it, then my subject matter jurisdiction is gone. So you either have a standing problem or a subject matter jurisdiction problem. If you want to try to replead this with those two things in mind, I will let you do it. But I am telling you right now, I don't see any way that you can beef with the Indiana trial court over its Supreme Court rule.

MR. MYMA: In other words, if Indiana does something routinely that deprives their population of due process, then that's acceptable? If I'm not affected by it now, but I was affected by it then.

THE COURT: It's not acceptable, but it's not something you have standing to challenge.

MR. MYMA: But if I was harmed by it, I do have --

again, I will stand on the facts. If you read the law, it's pretty clear that they make you ask for special findings and if you don't, you don't get them. Now, I asked for special findings and, of course, I still didn't get them. That gives you an indication that there's something not quite right in Denmark. So I only need to plead those facts and I can rely on the Court to construe or deny my relief, and I'll try to replead it if possible, if I have some understanding of -- and I will do my homework about what my standing is for a place that had -- I had been harmed by the courts but I am not currently being harmed by the court because I am not in their court anymore.

THE COURT: Right.

MR. MYMA: However, it is kind of a circuitous thing because the North Carolina courts have declared their orders all temporary, which means the Indiana court order is still the guiding order by which they are enforcing, at least this is what they did. They did not have a judgment or a new court order or a new visitation regimen. They just said, this is a temporary modification and they put some conditionals on it. So they're still going by --

THE COURT: Now you're going back again to where we started, which is you are complaining about the court orders that have been entered against you. And, again, I cannot get you out from under those court orders. You cannot challenge

those court orders here.

MR. MYMA: Right. I'm only challenging the way that they're obtained, not the substance of them themselves. The way that they're obtained if they did not give process due, then it's a constitutional issue.

THE COURT: Then you have to -- it's a constitutional issue if you have someone who is a suable entity, but you don't. And the reason for that is because you can challenge the due process of your state court orders by filing appeals all the way up to the U.S. Supreme Court, which I know you have done. Okay. That was your due process.

MR. MYMA: Right. Well, the --

THE COURT: When you got all the way up to the U.S. Supreme Court and were able to state your case for why you were denied due process, that was your process. That was all that you get under the constitution. Any claim that you're trying to bring here where you're trying to relitigate all of those issues, is not going to be a viable one.

So I've given you -- let me recap, Counts 10, 11, 12, 15, 17, 18, 21 have obvious Rooker Feldman problems.

To the extent you are asking for the Court to do anything undoing a state court order, those are denied with prejudice. Counts 6 and 4 brought claims that are not recognized as a tort. Those are dismissed with prejudice. Count 13, to the extent you tried to bring a habeas claim, that

is not going to be a viable one either.

I've dismissed without prejudice Counts 3, 5, 8, 9, and 19 because those need to be pled with particularity. And Counts 1, 2, 7, 14, 16, and 20 as not plausibly alleged in its current form. So you can try again with those with an amended complaint. It should not be 154 pages long. It should allege only the facts that are required to state a plausible claim to relief.

You do need to specify which of the two defendants did what to you and when. For the claims that need to be plead with specificity, you have to include specific reference to misstatements, defamatory statements, misrepresentations, or a specific interception of a conversation that you believe support a claim. You cannot just describe 9 years worth of events and then throw it at me and say, claims, here, 9 years. Okay.

The amended complaint you don't need to waste any of your time on legal argument or legal conclusions. Those don't have to be pled and shouldn't be. If you have already litigated an issue in the state court, I would expect to see that it is not in amended complaint. If you believe that a state court order harmed you or was wrongfully decided, your sole remedy is going to be in state court.

As I've already discussed, I have no jurisdiction over the custody decision. So you cannot seek to return the

children to you as a remedy. And then lastly I'm going to add for you, before I have some things to add for the defendants. I have read the Indiana Court of Appeals opinion, which concluded that you abused the legal system in an effort to harass these defendants. That will not be allowed here. Your pleadings are governed by Rule 11, which means that every single thing you say in your amended complaint needs to have a factual basis or a good-honest belief that you have a factual basis and it needs to be pursuant to the law or a good-faith honest request for an extension of the law.

I understand your pro se and I obviously will make all of the appropriate concessions for your pro se status; but you will be subject to sanctions under Rule 11. If you have any questions about what we've talked about today, I'm happy to answer them for you; but I do have very serious concerns that this litigation is being used solely to harass the mother of your children and her new significant other.

As for the defendants, if you file another motion to dismiss, I expect more than what I saw this time around. You will need to challenge the claims on a count-by-count basis. You need to discuss choice of law given that we have events occurring in Illinois, Indiana, and North Carolina, I think it is an open question that is worth discussing. And I expect that you will cite case law describing why each and every claim you think cannot be raised on a claim-by-claim basis.

With all of that said, I know I've been talking for a very long time, does anyone have any specific questions at this moment?

MR. MYMA: Do I need to plead anything beyond the facts or some reasonable -- because the claims themselves, you know enough about them to dismiss them or to have me replead them. You wanted a very concise statement, so if the elements to, let's say, emotional distress are contained in the facts, then you basically want to see those very specifically alleged?

THE COURT: Look, if you have a very good sense as to the causes of action you want to bring. I don't -- you don't have to as a pro se litigant bring specific claims, legal claims. You don't have to plead causes of action, but it is helpful for me to have some kind of framework because, especially, you know, given what I saw in the 154 pages, I would have not had a lot to go on if you had not had very specific legal causes of action attached to it. At this moment I don't see any claims plausibly alleged. So if you believe that under the law you have legal claims for, for example, defamation or fraud, it would be helpful if you would explain which ones and with particularity with those.

MR. MYMA: I will try to subordinate to the claim that was originally made. I don't anticipate bringing any new claims.

THE COURT: But you don't need to replead facts.

MR. MYMA: Well, I need to put the facts -- consolidate those specifically that apply to the count that I'm still alleging and the ones that are dismissed with prejudice, I don't need to --

THE COURT: If you want to put all of the facts in, you know, paragraphs 1 through 30 and then reallege 1 through 30 with respect to different causes of action, you can do that. But you need to make sure that 1 through 30 have a specific interception of a call or a specific defamatory statement or a specific act of fraud, okay?

MR. MYMA: Okay.

THE COURT: Do you have any questions?

MS. O'CONNELL: I don't. The only question I have is I really would like the -- I would like a transcript of today because it was so much and how do I do that.

THE COURT: You can talk to Ms. Resendez after court or I think she has a web site.

MS. O'CONNELL: Perfect.

MR. MYMA: How is the briefing schedule going to go forward?

THE COURT: Let's talk about that. How long do you need to replead?

MR. MYMA: As much as time as I can get because you are very specific about what you want. I have to do a lot of research. I have to extract all the facts from all the

evidence, which there is tons of evidence to go through.  So at least 60 days, and I have, you know, as the Court has gratefully acknowledged, I do have some other commitments between the 3rd of March and the 14th of April.  So I would need 60 days beyond that if the Court is amenable.

THE COURT:  Does June 15th get you there?

MR. MYMA:  Don't forget I have something else to do on the 3rd of June, I believe.

THE COURT:  Well, it's your choice to litigate numerous things pro se.  This is your burden to bear.

MR. MYMA:  It's your court.  It's your schedule.

THE COURT:  Jim, 60 days, please, for the amended complaint.

How long do you need to answer or otherwise plead.

MS. O'CONNELL:  I'll just do 45 days.  If he has 60, I'll take 45.

THE CLERK:  July 30th.

THE COURT:  July 30th, please, for an answer or otherwise plead.  Assuming there's a motion to dismiss filed, then I'm going to ask you to reach out to Mr. Myma and come out with a post-briefing schedule.

MS. O'CONNELL:  Okay.  I will.

THE COURT:  Put your heads together.  If you're on July 30th filing a motion to dismiss, you will reach out to him and you will all come up with a briefing schedule that you will

42

submit alongside the motion to dismiss, please.

MS. O'CONNELL:  I understand.

THE COURT:  As I understand it, he does not like e-mail communications?

MR. MYMA:  Well, no.  I have no objection here because there's no hostility between counsel and myself.  In the other instance, I've given the reasons why very clearly.

THE COURT:  So in this you are conceding to correspond with counsel via e-mail?

MR. MYMA:  Perfectly satisfactory.

THE COURT:  Thank you all.

MS. O'CONNELL:  Thank you, Your Honor.

   (Concluded at 11:01 a.m.)

                          *    *    *    *    *

   I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


*/s/Noreen E. Resendez*                    *March 12, 2026*
Noreen E. Resendez                    Date
Official Court Reporter